WILLOUGHBY v LEHRBASS

Docket No. 80068. Submitted January 9, 1986, at Grand Rapids.—
Decided April 7, 1986.

Frank Dain Willoughby and his parents, Frank Willoughby and
Betty Lou Willoughby, filed suit in Mason Circuit Court against
his teacher, Roger Lehrbass, the Freesoil Community Board of
Education, the Freesoil Community School District, School
Superintendent Dr. L. Vern Hoyt and school principal James R.
Duvall. Plaintiffs' suit arose from an incident wherein defen-
dant Lehrbass disciplined Frank Dain Willoughby in class and
escorted him to the principal's office. Plaintiffs charged defen-
dants with false imprisonment, negligent hiring and supervi-
sion of Lehrbass and gross abuse and use of unreasonable force
on Frank Dain Willoughby, in violation of the section of the
School Code on discipline and corporal punishment. The circuit
court, Richard I. Cooper, J., on governmental immunity
grounds, granted a partial summary judgment in favor of
defendants on plaintiffs' counts alleging false imprisonment
and negligent hiring and supervision. The circuit court also
allowed plaintiffs to amend their complaint to charge a civil
rights violation under 42 USC 1983. However, the circuit court
dismissed the civil rights count on defendants' motion. The case
proceeded to trial on the intentional tort count, and the jury
returned a verdict of no cause of action in favor of defendants.
The circuit court denied plaintiffs' post-trial motions for a new

REFERENCES

Am Jur 2d, Assault and Battery §§ 46, 122

Am Jur 2d, False Imprisonment §§ 88, 123 et seq.

Am Jur 2d, Municipal, School, and State Tort Liability §§ 11 et seq.

Am Jur 2d, Schools § 258.

Administration of corporal punishment in public school system as
cruel and unusual punishment under Eighth Amendment. 25
ALR Fed 431.

Construction of statutes or rules making mandatory the use of
pattern or uniform approved jury instructions. 49 ALR3d 128.

Modern status of doctrine of sovereign immunity as applied to
public schools and institutions of higher learning. 33 ALR3d 703.

Liability, for false arrest or imprisonment, of private person detain-
ing child. 20 ALR3d 1441.

trial, judgment notwithstanding the verdict, and rehearing. Plaintiffs filed an application for delayed appeal, which the Court of Appeals granted. *Held:*

1. Any error the circuit court may have committed by refusing to allow plaintiffs to litigate their civil rights claim was harmless, since the jury would have found no violation under federal law and would have reached the same verdict had it considered the civil rights claim. The United States Supreme Court has ruled that the common law rule allowing a teacher to use reasonable force against a student comports with due process standards. MCL 380.1312, which provides that a teacher or superintendent may use reasonable physical force when disciplining a student, basically codifies the common law. Suits under 42 USC 1983 must establish that the conduct complained of deprived the aggrieved party of rights, privileges or immunities secured by the Constitution or laws of the United States. In this case, the jury specifically found that defendants had not used anything other than reasonable force in disciplining Frank Dain Willoughby, and that, therefore, defendants had not violated the statute.

2. The circuit court did not abuse its discretion and did not err by refusing to excuse two prospective jurors, one of whom was a former teacher's aide and the other of whom was a former teacher, for cause, as plaintiffs requested. The record did not indicate that the prospective jurors were unduly interested in a question like the issue to be tried or that they had opinions that would improperly influence their verdict.

3. Defense counsel's statements during closing arguments that Frank Dain Willoughby had been in defendant Lehrbass's classes on a number of previous occasions did not constitute misconduct requiring a new trial and did not prejudice plaintiffs, since the remark was not intended to nor did it violate the parties' stipulation not to make any reference to a past incident involving Frank Dain Willoughby's use of a penknife.

4. The circuit court did not err when it instructed the jury on the School Code provision concerning corporal punishment, MCL 380.1312. The court could hardly define the law better than by reading the statute exactly as written. The instruction clearly informed the jury that a teacher could use reasonable physical force on a pupil necessary for the purpose of maintaining proper discipline, and that the teacher would not be liable for using physical force on a pupil to maintain proper discipline.

5. The Legislature intended that a teacher might be guilty of assault and battery when his conduct exceeds the parameters

of the School Code provision concerning corporal punishment, MCL 380.1312. The statute was not intended to abrogate the common-law torts of assault and battery, but rather was intended to carve a limited exception into the common-law doctrine in order to provide educators with the necessary means of maintaining discipline in the classroom.

6. The circuit court did not err when it gave the standard jury instruction on battery without any deviation or omission, but supplemented the instruction with other standard instructions on wilful and wanton misconduct. The circuit court could have properly found that plaintiffs' allegations of wilful, malicious, and wrongful grabbing of Frank Dain Willoughby and of grossly abusing him, in effect, amounted to claims similar to those in the standard jury instruction on wilful and wanton misconduct. The circuit court also had to take the School Code provision on corporal punishment, MCL 380.1312, into account. A standard instruction on battery alone might have left the jury with the mistaken impression that the tort of battery somehow negated the School Code provision.

7. No error resulted from the use of a special verdict form by the jury. The use of a special verdict form is allowed by a court rule and, in this case, the form was consistent with the instructions which were given.

8. The School Code provision on corporal punishment, MCL 380.1312, did not unconstitutionally deny plaintiff Frank Dain Willoughby's equal protection rights. The statute serves the important governmental objective of maintaining discipline in the schools to ensure a proper environment for education. Allowing a teacher to use limited physical force in certain circumstances is substantially related to achieving this objective. Moreover, there is clearly a reasonable relationship between the classification drawn, *i.e.,* students, and the legitimate state interest of maintaining proper discipline.

9. The jury's verdict was not contrary to the great weight of the evidence. The testimony at trial established that Frank Dain Willoughby was creating a disturbance in the classroom and that defendant Lehrbass found it necessary to take Willoughby to the school office to restore order. The evidence on the record did not establish that Lehrbass's use of force was unprovoked and unreasonable. The circuit court properly denied plaintiffs' motion for a new trial on the ground that the verdict was against the great weight of the evidence.

10. The testimony clearly disclosed conflicting views as to the appropriateness of the degree of force used as well as conflicting views as to whether Frank Dain Willoughby was injured.

Viewing the facts most favorably to the defendants, reasonable men could disagree as to whether Lehrbass used excessive force. Therefore, the circuit court properly denied plaintiffs' motion for a judgment notwithstanding the verdict.

11. Defendants school district and school board were engaged in a governmental function in hiring and supervising defendant Lehrbass. Therefore, the school district and school board were entitled to governmental immunity from tort liability and the circuit court did not err in granting partial summary judgment on that ground on plaintiffs' negligent hiring or supervision claim.

12. Plaintiffs did not allege that defendants Superintendent Hoyt and Principal Duvall were not acting during the course of their employment or within the scope of their authority. Plaintiffs also failed to establish bad faith on the part of these defendants. Furthermore, these defendants were engaged in discretionary acts in hiring and retaining defendant Lehrbass. Summary judgment in favor of these defendants was properly granted by the circuit court on the basis of governmental immunity.

13. Defendant Principal Duvall was engaged in a discretionary act at the time he allegedly held Frank Dain Willoughby in his office. The circuit court properly granted summary judgment in favor of Duvall based on governmental immunity.

14. The circuit court granted summary judgment in favor of defendant Lehrbass on plaintiffs' claim of false imprisonment. Instruction and supervision are essentially ministerial-operational activities for which there is no immunity from tort liability. However, no reversible error occurred since plaintiffs did not specifically allege in their complaint that Lehrbass did any act which resulted in the detention of Frank Dain Willoughby in the principal's office, and the evidence established that Lehrbass soon left the office after taking Willoughby there.

Affirmed.

1. SCHOOLS — SCHOOL CODE — STUDENT DISCIPLINE — CORPORAL PUNISHMENT.

The common-law rule allowing a teacher to use reasonable force against a student when maintaining school discipline comports with due process standards and is codified in a provision of the School Code (MCL 380.1320; MSA 15.41312).

2. JURY — VOIR DIRE — APPEAL.

A trial court has broad discretion in its voir dire examination of a prospective juror, and its decision as to a juror's impartiality

may be reversed on appeal only if it represents a clear abuse of that discretion.

3. JURY — VOIR DIRE — CHALLENGE FOR CAUSE — COURT RULES.

A juror is presumed to be competent and any party challenging a juror for cause must show that the challenged juror has preconceived opinions or prejudices or other such interests or limitations as would impair his capacity to render a fair and impartial verdict; a trial court must excuse a juror whenever a challenge for cause clearly falls within one of the several grounds established by the court rule; such a showing is equivalent to a showing of bias or prejudice (GCR 1963, 511.4, now MCR 2.511[D]).

4. NEW TRIAL — IMPROPER CONDUCT.

Objectionable comments made by counsel which were designed to and did influence the jury improperly and unfairly during trial are grounds for a new trial.

5. APPEAL — JURY INSTRUCTIONS.

Instructions of a trial judge to a jury must be reviewed as a whole and not in selective excerpts; if the instructions are erroneous or inadequate, reversal is required only where a failure to reverse would be inconsistent with substantial justice.

6. TRIAL — JURY INSTRUCTIONS — STANDARD JURY INSTRUCTIONS.

A standard jury instruction must be given when it is applicable, accurate, and requested by a party; the determination of a requested instruction's applicability is within the discretion of the trial court.

7. SCHOOLS — SCHOOL CODE — STUDENT DISCIPLINE — CORPORAL PUNISHMENT.

A teacher may be guilty of assault and battery when his conduct exceeds the parameters of the School Code provision concerning corporal punishment which allows a teacher to use reasonable force when disciplining a student; the statute was not intended to abrogate the common-law torts of assault and battery but rather was intended to carve a limited exception into the common-law doctrine in order to provide educators with the necessary means of maintaining discipline in the classroom (MCL 380.1312; MSA 15.41312).

8. SCHOOLS — SCHOOL CODE — STUDENT DISCIPLINE — CORPORAL PUNISHMENT — CONSTITUTIONAL LAW — EQUAL PROTECTION.

The School Code provision concerning corporal punishment which allows a teacher to use reasonable force when disciplining a

student does not violate the equal protection clause of the United States Constitution or the Michigan Constitution; the provision serves the important governmental objective of maintaining discipline in the schools to ensure a proper environment for education; allowing the teacher to use limited physical force in certain circumstances is substantially related to achieving this objective; there is clearly a reasonable relationship between the classification of students and the legitimate state interest of maintaining proper discipline (US Const, Am XIV; Const 1963, art 1, § 2; MCL 380.1312; MSA 15.41312).

9. TRIAL — JURY — VERDICTS.

A court may not substitute its judgment for that of the finders of fact, and where there is competent evidence to support a finding of the jury, its verdict should not be set aside.

10. MOTIONS AND ORDERS — JUDGMENT NOTWITHSTANDING THE VERDICT — APPEAL.

The standard of review of a grant or denial of a judgment notwithstanding the verdict is: Viewing the evidence in the light most favorable to the nonmoving party, giving that party the benefit of every reasonable inference that can be drawn from the evidence, if reasonable men could differ, the question is one for the jury.

11. SCHOOLS — GOVERNMENTAL IMMUNITY — SCHOOL BOARDS — SCHOOL DISTRICTS — TEACHERS.

A section of the School Code expressly provides that the board of a school district has the authority to hire and contract with qualified teachers and to continue their contracts as it deems appropriate; hence, a school district and its board are engaged in the exercise of a governmental function when hiring and supervising teachers and is immune from tort liability for the exercise of such function (MCL 380.1231; MSA 15.41231).

12. SCHOOLS — GOVERNMENTAL IMMUNITY — SCHOOL OFFICIALS — TEACHERS.

School superintendents and principals are immune from tort liability where: (a) they were acting during the course of their employment and acting, or reasonably believed they were acting, within the scope of their authority; (b) acting in good faith; and (c) performing discretionary-decisional, as opposed to ministerial-operational, acts; teachers, however, are primarily engaged in ministerial-operational activities when instructing and supervising students in the classroom and are not, therefore, immune from tort liability.

13. FALSE IMPRISONMENT — TORTS.
   In order to establish the tort of false imprisonment, a plaintiff must prove that he was intentionally and unlawfully restrained against his will.

*Gockerman, Wilson, Broberg & Swain, P.C.* (by *Leonard E. Broberg*), for plaintiffs.

*Cholette, Perkins & Buchanan* (by *Edward D. Wells*), for defendants.

Before: R. M. MAHER, P.J., and ALLEN and R. LAMB,* JJ.

ALLEN, J. In an action for battery and use of unreasonable physical force on a student, must the trial judge instruct on battery solely pursuant to the standard jury instructions, and must the trial judge inform the jury that the school code provision dealing with corporal punishment, MCL 380.1312; MSA 15.41312, applies only where the teacher is acting to maintain proper discipline? These questions and others confront us in this case of first impression concerning discipline in the public schools.

On January 23, 1981, plaintiff Frank Dain Willoughby was a student in defendant Roger Lehrbass's fifth hour advertising class at Freesoil Community School. On that date, before Lehrbass's class began, the principal asked plaintiff to assist in replacing some doors which had been removed from their hinges. After completing this task, Willoughby walked into the advertising class a few minutes late. According to Lehrbass, another student was giving an oral presentation for the final examination. Willoughby, nevertheless, walked by Lehrbass's desk and with a sweeping motion of his hand started to brush into the wastebasket a

---

* Circuit judge, sitting on the Court of Appeals by assignment.

number of folded-up pieces of paper sitting on Lehrbass's desk. Lehrbass was using the slips of paper to select the order in which the students would give their oral presentations.

As Willoughby swept his hand across the desk, Lehrbass grabbed his arm and instructed him not to touch the papers. Willoughby then intentionally or accidentally kicked the wastebasket over, and, according to Lehrbass, mumbled something which sounded disrespectful.

Willoughby then walked to a seat in the front row around where he usually sat. Although the students did not have assigned seats, they normally sat in the same area each day. Willoughby testified that he tried one seat in the front row but found it broken or too low. He then headed for some empty seats in the back. When he was halfway there, Lehrbass came up from behind, grabbed his left arm and twisted it behind his back in a "half nelson". Lehrbass said, "Come on, Frank, let's go." Lehrbass began marching Willoughby to the principal's office.

Lehrbass pushed Willoughby out of the classroom and up the steps. Willoughby said, "Let go, you're hurting me." On the landing, Willoughby squirmed loose and said he could find the office himself. However, according to Lehrbass, Willoughby started toward the steps going down—away from the office. (Willoughby's version was that he turned around to go *up* the steps.) In any event, Lehrbass then grabbed Willoughby in a "full nelson", with his arms underneath Willoughby's armpits and his palms on the back of Willoughby's neck. Willoughby testified that he heard cracking up and down his back, and felt pain and soreness as Lehrbass pushed against his neck and back.

Lehrbass released Willoughby at the top of the

stairs near the principal's office. Inside the office, Willoughby and Lehrbass each told the principal, defendant James Duvall, their versions of what had transpired. Willoughby asked to call home, but Duvall refused this request. Willoughby then attended his next class, physical education, where he participated in a game of speedball.

Willoughby testified that he consulted a chiropractor that evening because of continuing soreness in his back, neck, and shoulders. He treated with the chiropractor for some time. Subsequently, he saw an orthopedic surgeon who diagnosed his condition as myofascitis, an inflammation of the back muscles or tissues.

Plaintiffs' complaint, filed July 23, 1981, charged defendants with false imprisonment, negligent hiring and supervision, and gross abuse and use of unreasonable force on Willoughby. These latter allegations were apparently based on MCL 380.1312, which provides in pertinent part:

"(2) A teacher or superintendent may use reasonable physical force on the person of a pupil necessary for the purpose of maintaining proper discipline over pupils in attendance at school.

"(3) A teacher or superintendent shall not be liable in a civil action for the use of physical force on the person of a pupil for the purposes prescribed in this section, except in the case of gross abuse and disregard for the health and safety of the pupil."

Prior to trial defendants moved for partial summary judgment on the counts alleging false imprisonment and negligent hiring and supervision. The trial court granted this motion on governmental immunity grounds. Subsequently, on April 7, 1983, the trial court granted plaintiffs' motion to amend their complaint to charge a civil rights violation under 42 USC 1983.

On the first day of trial, April 20, 1983, the trial court dismissed the civil rights count on defendants' motion. The case proceeded to trial on the intentional tort count, and the jury returned a verdict of no cause of action in favor of defendants.

Plaintiffs moved for a new trial, judgment notwithstanding the verdict, and rehearing. The trial court denied these motions on July 22, 1983. Plaintiffs filed an application for delayed appeal, which this Court granted on March 29, 1985. Seven issues, the fourth issue being of first impression, are raised on appeal. We discuss them *seriatim* and affirm.

I

On April 7, 1983, the trial judge allowed plaintiffs to amend their complaint to allege a cause of action under 42 USC 1983, and promptly thereafter plaintiffs filed an amended complaint alleging, *inter alia,* that prior to January 23, 1981, Roger Lehrbass had "on several occasions engaged in violent, assaultive and intemperate behavior, allegedly for the purpose of disciplining students". However, on the first day of trial, prior to the commencement of trial proceedings, the court ruled that the civil rights cause of action was not a part of the proceedings. The court explained that the subject was not raised in time for the court to familiarize itself on the federal question and further it was because the court felt there would be confusion as to whether ordinary negligence alone might justify the civil rights claim.

Then, at the hearing in July, 1983, on plaintiffs' motion for a new trial, the trial judge stated that based on the testimony at trial there was really nothing which would have cause the jury to have decided the case any differently had the civil

rights cause of action been heard. The trial court concluded that both because of the lateness in the proceedings when the civil rights action was raised, as well as the court's observation of the evidence presented, it was satisfied that even though the court could have given a more "expanded reason" prior to the date of trial, it was not wrong to deny the motion for inclusion of the civil rights claim.

Plaintiffs argue that the trial judge committed reversible error based upon the fact that dismissal of the civil rights cause of action cannot be supported by the trial judge's unfamiliarity with the federal cause of action; the dismissal was inconsistent with the trial judge's original grant of plaintiffs' motion to amend their complaint to add the cause of action; and, when viewing the evidence in a light most favorable to plaintiffs, the evidence establishes that plaintiffs had sufficiently pleaded a 42 USC 1983 cause of action.

A major portion of the parties' briefs on this issue is devoted to how to characterize the trial judge's action. The standard of review differs depending on whether the court's action was an involuntary dismissal under MCR 2.504(B), formerly GCR 1963, 504.2, a directed verdict granted under MCR 2.515, formerly GCR 1963, 515.1, a grant of summary judgment under MCR 2.116(C)(10), formerly GCR 1963, 117.2(3), or a denial of a motion to amend pleadings. However, in our opinion it makes no difference which way the court's action is characterized. Assuming, *arguendo,* that the court erred by refusing to allow plaintiffs to litigate their civil rights claim, any error was harmless based on the fact that the verdict would have been the same in the absence

of the assumed error. *Knoper v Burton,* 383 Mich 62, 68; 173 NW2d 202 (1970); *Pelley v Peterbilt Motors Co,* 133 Mich App 664, 667; 350 NW2d 787 (1984); MCR 2.613(A).

On a special verdict form the jury specifically found that Lehrbass had not used anything other than reasonable force in disciplining plaintiff Willoughby.[1] In *Parratt v Taylor,* 451 US 527, 536; 101 S Ct 1908; 68 L Ed 2d 420 (1981), the Court held that suits under 42 USC 1983 must establish that the conduct complained of deprived the aggrieved party of rights, privileges or immunities secured by the Constitution or laws of the United States. In *Ingraham v Wright,* 420 US 651; 97 S Ct 1401; 51 L Ed 2d 711 (1977), the Supreme Court held that the common law rule allowing a teacher to use reasonable force against a student comports with due process standards. MCL 380.1312; MSA 15.41312, heretofore referred to, basically codifies the common law. Since the jury specifically found that Lehrbass had comported with the Michigan statute, and since the Michigan statute is a codification of the common law which in *Ingraham* was found not to violate constitutional rights, it is clear that even if the trial judge had allowed the civil rights claim to go to the jury, the jury still would have found no violation under federal law.

## II

During voir dire, plaintiffs moved to excuse jurors Jane Myer and Constance Newkirk for cause. The trial court refused the request and plaintiffs excused each juror peremptorily. Plaintiffs claim that the trial court erred based on the fact that the prospective jurors' responses to questions established that they were biased and, as a result,

[1] See issue IV, *infra.*

plaintiffs were forced to use two peremptory challenges that they would not have had to use otherwise. We disagree.

A trial judge has broad discretion in his voir dire examination of a prospective juror, and his decision as to the juror's impartiality may be reversed on appeal only if it represents a clear abuse of that discretion. *McNabb v Green Real Estate Co,* 62 Mich App 500, 505-506; 233 NW2d 811 (1975), *lv den* 395 Mich 774 (1975). Moreover, a juror is presumed to be competent and any party challenging a juror for cause must show that the challenged juror has preconceived opinions or prejudices or other such interests or limitations as would impair his capacity to render a fair and impartial verdict. A trial court must excuse a juror whenever a challenge for cause clearly falls within one of the several grounds established by the court rule. Such a showing is equivalent to a showing of bias or prejudice. *McNabb, supra,* pp 505-506.

GCR 1963, 511.4, subds (4), (5), and (13), now MCR 2.511(D), subds (4), (5), and (13) state that it is grounds for a challenge for cause where a person shows a state of mind that will prevent him from rendering a just verdict or has formed a positive opinion on the facts of the case or on what the outcome should be, has opinions or conscientious scruples that would improperly influence that person's verdict, or is interested in a question like the issue to be tried.

Applying the above standards to the facts of this case, it is our opinion that there are not sufficient grounds for this Court to find that the trial judge abused his discretion in refusing to excuse jurors Myer and Newkirk for cause. Myer specifically stated that her background and her acquaintance with her mother-in-law would have no effect on

her impartiality. Moreover, Myer is no longer a teacher's aide and stated that she left the profession because she did not like it. Hence, it does not seem that Myer was unduly interested in a question like the issue to be tried. Based upon the above, there are simply no grounds for finding that the trial judge improperly refused to excuse Myer for cause. Hence no reversible error occurred with regard to the removal of this juror.

A similar situation existed with regard to juror Newkirk. The fact that she had been a teacher for nine years prior to trial and that her husband was presently a teacher in another school district does not, in and of itself, establish that she either had an interest in the litigation or had opinions that would improperly influence her verdict. Newkirk stated that her experience would have no influence on her perception of the evidence nor of the verdict.

Plaintiffs' characterization of Newkirk's statements suggests that Newkirk was involved in a situation similar to that in the case presented in the instant trial. However, the transcript reveals that Newkirk only supposed that she and her husband experienced the general discipline problems that any teacher would experience during the course of their professional careers. Hence, it is evident that there was no specific incident where either Newkirk or her husband were faced with a problem involving discipline of the magnitude presented by the instant case.

### III

Prior to trial, plaintiffs' attorney brought a motion *in limine* to prevent the introduction of evidence concerning previous bad acts committed by Willoughby. Specifically, the parties were con-

cerned about the introduction of evidence concerning a past incident involving a penknife. The parties mutually agreed not to discuss that issue and the trial court then instructed defendants' attorney not to ask any questions as to the use of a knife. During trial, defendant Lehrbass testified without objection that he had Willoughby in his classes for a total of six different courses.

During closing argument, the following occurred:

*"[Defendants' attorney, Mr. Ward:]* Now, you know, I was interested, I was hoping it would come up in Dr. Ewing's testimony. On his wall, there's one on the wall of every doctor's office in the world, a Hypocratic Oath and as I was listening to him, I looked up there and I saw it and every doctor says that they will hold their teacher equal to their parents in this art. The reason for that is that a doctor can't practice medicine until he's a disciplined doctor. Almost the most important part of his skill is discipline. Now, was what Roger Lehrbass did reasonable? I'm just going to ask you to consider this, that this didn't happen like that. Roger Lehrbass had the benefit of having had that young man in his classroom for three years. He'd had him, I think, in six different courses—

*"Mr. Broberg:* I'm going to object, your Honor, to Counsel raising this on argument. I believe we had an agreement—

*"Mr. Ward:* It's part of the testimony that he knew the young man from six courses.

*"The Court:* Let's go into chambers and see. (Whereupon, both Counsel and the Court left the Courtroom at about 9:50 a.m. and returned to the Courtroom at about 9:52 a.m.)"

Plaintiffs argue that the above statement made during closing argument violated the parties' stipulation and constituted misconduct of defense counsel requiring reversal. Objectionable comments made by counsel which were designed to, and which undoubtedly did, influence the jury

improperly and unfairly during trial are grounds for a new trial. *Benmark v Steffen,* 9 Mich App 416; 157 NW2d 468 (1968); *Watson v Montmorency Road Comm,* 52 Mich App 258, 260; 217 NW2d 129 (1974). We find no error.

The stipulation only barred evidence of the past incident involving a penknife, or, if read broadly, any evidence with regard to the past bad acts of plaintiff Willoughby. However, defense counsel's argument only referred to the fact that Willoughby had been in defendant Lehrbass' classes on a number of previous occasions. There was no indication in defense counsel's statement that Willoughby had ever engaged in bad acts on previous occasions. Therefore, it is evident that the parties' stipulation was not violated in any way.

Defense counsel's statement does not constitute misconduct which prejudiced plaintiffs based upon the fact that the remark was not intended to nor did it violate the parties' stipulation. Moreover, the remark was well supported by evidence presented on the record, and no prejudice occurred to plaintiffs because defense counsel did not in any way infer that Willoughby had previously engaged in bad acts in defendant Lehrbass' classroom.

## IV

Plaintiffs next claim error in the jury instructions on battery and the School Code provision concerning corporal punishment. On these topics the trial court instructed as follows:

"Now, in this case, the first claim or the first grounds that the Plaintiff asserts against the Defendants pertains to a statute or a law that Michigan has. I'm now going to read the pertinent portions of that statute.

" 'A teacher or a superintendent may use reasonable physical force on the person or the pupil necessary for

the purpose of maintaining proper discipline over pupils in attendance at school. A teacher or superintendent shall not be liable in a civil action for the use of physical force on the person or the pupil for the purposes prescribed in this section except in cases of gross abuse and disregard for the health and safety of the pupil.'

"The Plaintiff has the burden of proof: A, That Frank Willoughby was injured because of Mr. Lehrbass; and, B, that teacher Roger Lehrbass acted in a way that was a gross abuse of Frank Willoughby and showed a disregard for Mr. Willoughby's health and safety.

"If you find that Roger Lehrbass was using reasonable force for the purpose of maintaining proper discipline over Frank Willoughby, then he would not be liable to the Plaintiff because a teacher is not liable in a civil case for the use of reasonable physical force on a pupil to maintain discipline. If you find that Roger Lehrbass actions were a case of gross abuse and he disregarded the health and safety of Frank Willoughby, then Mr. Lehrbass would be liable.

"Next, you should also consider whether Mr. Lehrbass committed the intentional tort of battery against Frank Willoughby. This is the second claim that the Plaintiff has raised against the Defendant. A battery is the wilful and wanton touching of a person against that person's will. To prove the second matter, the second claim, the Plaintiff Frank D. Willoughby has the burden of proof that: A, Mr. Roger Lehrbass wilfully and wantonly touched him against his will; and, B, That there was a deliberate intention by Mr. Lehrbass to harm Frank Willoughby or a reckless disregard for the safety of Mr. Willoughby involving a high degree of danger to Mr. Willoughby."

The trial court also submitted to the jury a number of questions on a special verdict form. The first two questions and answers were as follows:

"*Question Number 1:* Did Roger Lehrbass grossly abuse and disregard the health and safety of Frank D. Willoughby?

"Answer: *No* (yes or no)

"*Question Number 2:* Did Roger Lehrbass wilfully and wantonly injure Frank D. Willoughby or recklessly disregard his safety knowing there was a high degree of danger to Frank D. Willoughby?

"Answer: *No* (yes or no)."

Plaintiffs argue, as they did at trial and in post-trial motions, that the instructions and verdict form were erroneous for a number of reasons. First, plaintiffs maintain that the trial court erred in failing to instruct that under MCL 380.1312 the standard of gross abuse and disregard for the health and safety of the pupil should be applied only if the jury found that defendant Lehrbass used reasonable physical force for the purpose of maintaining proper discipline over Willoughby.

We find this argument lacking in merit. Jury instructions must be read as a whole, not dissected piecemeal and assigned as error in isolated portions. See *Dziurlikowski v Morley,* 143 Mich App 729, 734; 372 NW2d 648 (1985); *Scalabrino v Grand Trunk W R Co,* 135 Mich App 758, 765-766; 356 NW2d 258 (1984). If the jury charge is erroneous or inadequate, reversal is required only where failure to reverse would be inconsistent with substantial justice. *Johnson v Corbet,* 423 Mich 304; 377 NW2d 713 (1985); MCR 2.613(A).

Here, the trial court read the statute to the jury, clearly informing them that (1) a teacher could use reasonable physical force on a pupil *necessary for the purpose of maintaining proper discipline,* and (2) the teacher would not be liable for using physical force on a pupil *for the purpose prescribed in the statute, i.e.,* maintaining proper discipline. (Emphasis added.) The trial court could hardly define the law better than by reading the statute exactly as written. The court also referred to the

purpose of maintaining proper discipline twice in the paragraph following the burden of proof instruction. Although it may have been preferable to also add this reference when defining the elements of plaintiffs' burden of proof, we cannot say that the trial court erred in failing to do so.

Plaintiffs next contend that the jury instructions deviated from the standard jury instructions on battery and required a higher level of proof than that in the standard jury instructions or the common law.

SJI2d 115.02 and 115.21 on battery state in relevant part:

"A battery is the wilful or intentional touching of a person against that person's will *[by another/by an object or substance put in motion by another person].* (SJI2d 115.02).

"Plaintiff has the burden of proving that *[defendant wilfully and intentionally touched the plaintiff against the plaintiff's will/defendant put in motion an object or substance that touched the plaintiff against the plaintiff's will]."* (SJI2d 115.21).

As noted above, the trial court's charge added the following to the standard instruction: "Plaintiff has the burden of proof that * * * there was a deliberate intention by Mr. Lehrbass to harm Frank Willoughby or a reckless disregard for the safety of Mr. Willoughby involving a high degree of danger to Mr. Willoughby." Plaintiffs objected to this instruction at trial. Defendants responded that plaintiffs were not entitled to *any* instruction on battery, and that the court's charge should have been limited to MCL 380.1312.

The trial judge stated that he had supplemented the standard jury instructions on battery with the standard jury instruction on wilful and wanton

misconduct,[2] because plaintiffs' claim was one of intentional tort and plaintiffs' complaint asserted wilful conduct. The judge found that under MCL 380.1312, a teacher has the right to wilfully and intentionally touch a pupil under certain circumstances. Thus, the judge felt that using the standard jury instructions on battery alone would have confused and misled the jury.

We find no reversible error. Pursuant to GCR 1963, 516.6(2), now MCR 2.516(D)(2), standard jury instructions requested by a party must be given if "(a) they are applicable and (b) they accurately state the applicable law". The trial judge's discretion is invoked in determining whether or not standard instructions are accurate and applicable. *Socha v Passino,* 405 Mich 458, 467; 275 NW2d 243 (1979); *Zwiller v Detroit Coca-Cola Bottling Co,* 144 Mich App 505, 507; 376 NW2d 137 (1985). "The standard jury instructions do not establish substantive law, and the trial court has the responsibility for determining that their statement of the law is correct." *Scalabrino, supra,* p 763, quoting 2 Honigman & Hawkins, Michigan Court Rules Annotated, (2d ed Supp, 1983), p 204. The appellate court should not reverse for violations of MCR 2.516 "unless it concludes that noncompliance with the rule resulted in such unfair prejudice to a complaining party that the failure to vacate the jury verdict would be 'inconsistent with substantial justice'". *Johnson v Corbet, supra,* p 327, quoting MCR 2.613(A).

---

[2] SJI2d 14.02 states:

"Plaintiff charges the defendant with wilful and wanton misconduct.

"The term 'wilful and wanton misconduct' means more than the failure to use ordinary care. It means conduct which shows *[actual or deliberate intention to harm/or/a reckless disregard for the safety of others in the face of circumstances involving a high degree of danger]."*

In the case at bar, the trial judge did not deviate from or omit any portion of the standard jury instructions on battery. Instead, he supplemented them with other standard instructions on wilful and wanton misconduct which he found applicable because of plaintiffs' complaint and the nature of this action as one governed by a specific statute on school discipline. We find no abuse of discretion in the judge's determinations. In the first place, plaintiffs' complaint did allege wilful and malicious conduct by defendants. Plaintiffs' second amended complaint charged:

"15. That Defendant Roger Lehrbass, before Plaintiff Frank Willoughby could seat himself in another chair, with unreasonable force and arms wilfully, maliciously, wrongfully and in complete disregard for the health and safety of Plaintiff Frank Willoughby, grabbed Plaintiff Frank Willoughby and placed him in a 'half nelson', pulling Plaintiff out of the classroom and into the hall, thereby grossly abusing Plaintiff Frank Willoughby.

"16. That Plaintiff informed Defendant that he was hurt by Defendant's actions, but Defendant Lehrbass would not release Plaintiff Frank Willoughby and continued to unreasonably, wilfully, maliciously and wrongfully hold Plaintiff Frank Willoughby.

"17. That although Plaintiff Frank Willoughby freed himself from Defendant Roger Lehrbass' grip, Defendant Lehrbass again wilfully, maliciously, wrongfully, with unreasonable force and arms, and in complete disregard for Plaintiff Frank Willoughby's health and safety, grabbed Plaintiff placing him in a 'full nelson', wrenching Plaintiff Frank Willoughby's back and thereby grossly abusing and greatly injuring Plaintiff."

These allegations clearly went beyond the common law tort of battery as defined in the standard

jury instructions.[3] In fact, plaintiffs' complaint did not mention the word "battery". Looking to the complaint, the trial judge could properly find that the allegations of wilful, malicious, and wrongful grabbing and holding of Willoughby and of "grossly abusing" him in effect amounted to claims similar to those referred to in SJI2d 14:02.

Furthermore, in fashioning the jury instructions the trial judge had to take into account MCL 380.1312, the school code provision dealing with corporal punishment. As the judge observed, this section expressly permits a certain degree of wilful and intentional touching of a student by a teacher. To instruct on the standard jury instructions for battery alone might indeed have left the jury with the mistaken impression that the tort of battery somehow negated the statutory provisions.

Although there are no published Michigan opinions dealing with corporal punishment of a student, decisions in other jurisdictions are legion. The general rule is that a teacher is immune from liability for reasonable physical force or punishment used on a pupil to maintain discipline. Factors to consider in assessing the reasonableness of the punishment are the nature of the punishment, the child's age and physical condition, and the teacher's motive in inflicting the punishment. Anno, *Teacher's Civil Liability for Administering Corporal Punishment to Pupil*, 43 ALR2d 469, 472, § 3; Restatement Torts, 2d, §§ 147, 150, 151, 155. See, *e.g.*, *Tinkham v Kole*, 110 NW2d 258 (Iowa, 1961); *Roy v Continental Ins Co*, 313 So 2d 349 (La App, 1975), *writ den* 318 So 2d 47 (1975); *LaFrentz v Gallagher*, 105 Ariz 255; 462 P2d 804 (1970).

---

[3] For discussions of common law battery, see *Tinkler v Richter*, 295 Mich 396; 295 NW 201 (1940); *Mitchell v Daly*, 133 Mich App 414; 350 NW2d 772 (1984); *Overall v Kadella*, 138 Mich App 351; 361 NW2d 352 (1984).

Courts have held the above principles applicable in actions for assault and battery, where a state statute permits a teacher to use reasonable physical force to maintain order in the classroom. *Simms v School Dist No 1, Multnomah County,* 508 P2d 236 (Or App, 1973); *Hogenson v Williams,* 542 SW2d 456 (Tex Civ App, 1976). Where punishment is excessive or improper, the teacher may be guilty of assault and battery. See *Roberts v Way,* 398 F Supp 856 (D Vt, 1975); *Sansone v Bechtel,* 180 Conn 96; 429 A2d 820 (1980); *Baikie v Luther High School South,* 51 Ill App 3d 405; 9 Ill Dec 285; 366 NE2d 542 (1977).[4]

We think that in Michigan, as well, the Legislature intended that a teacher might be guilty of assault and battery when his or her conduct exceeds the parameters of the statute. MCL 380.1312. The statute was not intended to abrogate the common-law torts of assault and battery but, rather, was intended to carve a limited exception into the common-law doctrine in order to provide educators with the necessary means of maintaining discipline in the classroom. Here the trial judge adequately instructed the jury on the tort of battery *as alleged in plaintiffs' complaint* and on the applicable statutory provisions.[5]

Plaintiffs also claim error in the special verdict form which the trial court submitted to the jury. We find no reversible error. Special verdicts are permitted by GCR 1963, 514, now MCR 2.514.

---

[4] *Baikie* also held that in order to impose liability in an action for assault and battery, the plaintiff must prove wilful and wanton misconduct, which requires an intentional act or an act exhibiting reckless disregard for the safety of others.

[5] The instructions might have been improved by setting forth the factors defining reasonableness, as outlined above. However, with no Michigan law on the subject, no applicable standard jury instructions, and no proper requests from the parties for such instructions, we do not fault the trial judge for failing to further elaborate on the statutory standard of "reasonable physical force".

Plaintiffs' argument is that the special verdict questions reinforced the errors in the instructions. Since we have found no reversible error in the instructions, however, we reject this argument as well.

Finally, plaintiffs briefly claim that the statute, MCL 380.1312, is unconstitutional as a denial of equal protection of the laws. US Const, Am XIV; Const 1963, art 1, § 2. Plaintiffs maintain that there is no reasonable basis for classifying students subject to physical force at school any differently than nonstudents who may sue for battery under a lesser standard of liability.

We find this argument clearly lacking in merit. The law of equal protection was recently summarized in *State Treasurer v Wilson*, 132 Mich App 648, 651-652; 347 NW2d 770 (1984), *lv gtd* 419 Mich 935 (1984):

"The test to be applied to equal protection challenges depends upon the nature of the individual's interest affected by the legislation. *Grano v Ortisi*, 86 Mich App 482, 490; 272 NW2d 693 (1978). If the legislation affects a fundamental right or involves a suspect class, the court applies the strict scrutiny test which places the burden on the governmental authority to show that its regulation was justified by a compelling state interest. *Manistee Bank & Trust Co v McGowan*, 394 Mich 655, 668; 232 NW2d 636 (1975). If the legislation affects substantial rights or makes certain classifications, such as based on gender, the court employs a heightened scrutiny test. Under this test, the burden is on those defending the discrimination to show that it serves important governmental objectives and that the discriminatory means employed are substantially related to the achievements of those objectives. *Wengler v Druggist Mutual Ins Co*, 446 US 142, 150; 100 S Ct 1540; 64 L Ed 2d 107 (1980). If no special right or classification is involved, the rational basis test is employed. Under this test, the party attacking the statu-

tory classification has the burden of showing that the classification lacks a reasonable basis. If there is a reasonable relationship between the statutory classification and a legitimate state interest, the statute does not violate the Equal Protection Clause. *Forest v Parmalee,* 402 Mich 348, 356; 262 NW2d 653 (1978)." 132 Mich App 651-652.

Here we find that the legislation does not affect a fundamental right or involve a suspect classification. Whether it affects substantial rights is debatable; the right to be free from wilful and intentional touching is certainly not insubstantial, but may not rise to the level of rights requiring a heightened scrutiny or "means scrutiny" test. We need not decide this question, however, since under either the rational basis or heightened scrutiny test the legislation passes constitutional muster. The statute serves the important governmental objective of maintaining discipline in the schools to ensure a proper environment for education. Allowing the teacher to use limited physical force in certain circumstances is substantially related to achieving this objective. Moreover, there is clearly a reasonable relationship between the classification drawn and the legitimate state interest of maintaining proper discipline. Hence, we must reject plaintiffs' equal protection challenge.

## V and VI

Plaintiffs contend that they are entitled to a new trial under GCR 1963, 527.1(5), now MCR 2.611(A)(1)(e), because the verdict of the jury was contrary to the great weight of the evidence. Where there is competent evidence to support the finding of the jury, its verdict should not be set aside. *Bell v Merritt,* 118 Mich App 414, 422; 325 NW2d 443 (1982), *lv den* 417 Mich 954 (1983). The

testimony is clear and convincing that young Willoughby was creating a classroom disturbance and that defendant Lehrbass felt that it was necessary to take Willoughby to the school office to restore order. While there is conflicting testimony as to just how much force was necessary to apply to Willoughby on the stairway leading to the office, even Willoughby's own witness, Michael Morang, testified that Willoughby was arguing with defendant Lehrbass and struggling to get away all the way up the stairs. Based on our review of the record, we find little evidence that defendant Lehrbass's use of force was unprovoked and unreasonable. Indeed, the weight of the evidence establishes the contrary.

Plaintiffs also argue that they were entitled to a judgment notwithstanding the verdict. According to plaintiffs, reasonable persons would not disagree that defendant Lehrbass employed excessive force. The standard of review for a judgment notwithstanding the verdict is whether reasonable men could differ after viewing the facts most favorably to the opposing party. *Mackey v Island of Bob-Lo Co,* 39 Mich App 64; 197 NW2d 151 (1972). A judgment notwithstanding the verdict may be granted only where there is insufficient evidence, as a matter of law, to make an issue for the jury. *Napier v Jacobs,* 145 Mich App 285, 291; 371 NW2d 879 (1985). Because the testimony so clearly discloses conflicting views as to the appropriateness of the degree of force used as well as conflicting views as to whether young Willoughby was indeed injured, reasonable minds could differ. Accordingly, the trial court did not err in denying plaintiffs' motion for judgment notwithstanding the verdict.

## VII

Finally, it is argued that the trial court erred by

granting summary judgment in favor of both the corporate defendants and individual defendants on amended counts III and IV on the basis of governmental immunity. Count III of the second amended complaint alleged that defendants Freesoil School Board, Freesoil School District, School Superintendent Dr. L. Vern Hoyt and school principal James R. Duvall were reckless or negligent in failing to properly supervise, train, discipline or instruct defendant Lehrbass with regard to his conduct involving students and, therefore, their failure to properly screen, hire and/or retain defendant Lehrbass resulted in physical injury to plaintiff Frank Dain Willoughby. In count IV plaintiffs alleged that defendants Lehrbass and Duvall falsely imprisoned Willoughby in Duvall's office when, despite Willoughby's requests to be released, and for permission to leave Duvall's office and be permitted to call his parents to obtain assistance, Duvall refused his requests in complete disregard for Willoughby's health and safety.

Prior to trial, defendants moved for summary judgment contending that counts III and IV should be dismissed based upon the governmental immunity doctrine. The trial judge, on April 19, 1983, issued his opinion granting the motion on the basis of governmental immunity. The trial judge applied pre-*Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567; 363 NW2d 641 (1984), case law and determined that defendants' activities in screening, hiring, and supervising a teacher are activities falling under the statute providing immunity to governmental agencies. Hence, according to the trial judge, dismissal of count III was appropriate based upon the governmental immunity doctrine.

Regarding count IV, the trial judge stated that

Duvall's and Lehrbass's activities constituted supervisory functions establishing grounds for a finding that immunity existed for such activities.[6]

Plaintiffs argue on appeal that partial summary judgment was inappropriate because the governmental immunity doctrine is not applicable pursuant to the new interpretation of that doctrine in *Ross, supra.* Because two counts and two distinctive groups, namely the governmental agencies and individual employees of the governmental agencies, are involved, it is necessary that the legal issues be treated separately.

### Count III

#### (A) *The School Board and School District*

Regarding plaintiffs' negligent hiring or supervision claim, the appropriate governmental immunity test that must be applied pursuant to *Ross* is whether the school board and school district were engaged in a governmental function in hiring and supervising defendant Lehrbass. *Ross, supra,* p 591. A governmental function, according to *Ross,* is any activity expressly or impliedly mandated or authorized by constitution, statute, or other law. *Ross, supra,* p 620.

In *Regulski v Murphy,* a case which was consolidated in the *Ross* decision, the Supreme Court noted that a school district is required under § 1282 of the School Code of 1976, MCL 380.1 *et seq.;* MSA 15.4001 *et seq.,* to establish and carry on the departments it deems necessary or desirable, to determine the courses of study to be pursued, and to make reasonable regulations concerning anything necessary for the proper establishment, maintenance, management, and carrying on

---

[6] "Just as a zebra does not become a horse by being called one, Plaintiff cannot make a supervisory activity into a tort by calling it false imprisonment."

of public schools including regulations concerning the safety of children while in attendance at school. *Ross,* pp 649-650. Based upon the fact that the school board in *Regulski* was expressly authorized to offer a specific building trade course in which a student was injured, the Court found the injuries arose while the school district and its employees were engaged in the exercise or discharge of a governmental function.

In the case at bar, § 1231 of the School Code of 1976 expressly provides that the board of a school district has the authority to hire and contract with qualified teachers and to continue their contracts as it deems appropriate. Hence, it is evident that the school district was engaged in the exercise of a governmental function in hiring and continuing the employment of defendant Lehrbass. Therefore, it was entitled to governmental immunity from tort liability and the trial judge did not err in granting summary judgment on count III.

(B) *Superintendent Hoyt and Principal Duvall*

Regarding the two named individuals, *Ross* requires application of the test for individual governmental immunity; namely, whether the individual employees (a) were acting during the course of their employment and acting, or reasonably believed they were acting, within the scope of their authority; (b) acting in good faith; and (c) performing discretionary-decisional, as opposed to ministerial-operational, acts. *Ross, supra,* p 592.

There is no allegation in the second amended complaint that Hoyt and Duvall were not acting in the course of their employment. Therefore, the first prong of the *Ross* test is satisfied. In addition, plaintiffs' second amended complaint merely alleges that defendants wilfully, recklessly, negligently and/or grossly negligently failed to super-

vise, train and discipline defendant Lehrbass. However, in order to establish bad faith under *Ross,* it would seem that based upon the policy of the qualified immunity doctrine a plaintiff would have to establish that the governmental actor engaged in malicious or intentionally unlawful behavior. *Ross, supra,* pp 632-633. Plaintiffs' mere conclusory allegations that these two defendants wilfully or recklessly or negligently failed to supervise Lehrbass simply are not sufficient to establish bad faith on the part of these defendants. Therefore, the second prong of the *Ross* analysis was satisfied.

Finally, because the superintendent and principal of a school are vested with broad powers and authority regarding the employment of teachers under the School Code of 1976, *e.g.,* §§ 247, 248, 346, we hold that the principal and superintendent were engaged in discretionary acts in hiring and retaining defendant Lehrbass because they had the power of personal deliberation, decision and judgment. *Ross,* p 634. Therefore, summary judgment with regard to these two defendants was also appropriately entered pursuant to the doctrine of governmental immunity.

## Count IV

### (A) *Duvall*

Count IV alleges that Principal Duvall falsely imprisoned young Willoughby by refusing his requests to leave Duvall's office and for permission to call his parents. It is not alleged that, in so doing, Duvall was not acting in the course of his employment or that he maliciously or intentionally falsely imprisoned Willoughby. Thus, the first two prongs of the *Ross* test were satisfied and the question raised boils down to the third prong, *viz.:* whether Duvall was engaged in a discretionary as

opposed to a ministerial act at the time he allegedly held Willoughby in his office.[7]

The duties of a school principal are substantially different than the duties of a school teacher. On a day-to-day level, the job of a principal requires decision making and policy formulation. A number of alternatives were available to Duvall at the time he kept Willoughby in the office. He could have sent Willoughby back to his classroom, imposed a specific punishment upon him, or required Willoughby to remain in the office until he calmed down. Though defendants argue that the decision to discipline is in itself ministerial, the real decision facing Duvall was how to discipline. That involves the exercise of discretion. Accordingly, we believe the trial judge acted properly in granting summary judgment in favor of Duvall based upon governmental immunity.

(B) *Lehrbass*

In *Regulski* (consolidated with *Ross), supra,* the Supreme Court stated that although there was some decision making involved in classroom teaching, it was relatively minor, and that "instruction and supervision are essentially ministerial-operational activities for which there is no immunity from tort liability". 420 Mich 651. Thus, at first blush it would appear that defendant Lehrbass was not entitled to governmental immunity in falsely imprisoning Willoughby.

However, the uncontroverted testimony at trial was that Lehrbass did not long remain in Duvall's office. Instead, after giving his version of what

[7] In *Ross* the Supreme Court held that lower level officers and employees of governmental units are only given qualified governmental immunity and are only immune from liability if they are (1) acting during the course of their employment and are acting, or reasonably believe they are acting, within the scope of their authority, (2) are acting in good faith, and (3) are performing discretionary-decisional, as opposed to ministerial-operational, acts. 420 Mich 592.

transpired in the classroom and the hallway leading to Duvall's office, Lehrbass returned to his classroom to resume teaching. Willoughby remained in the office with Duvall and again asked to telephone his parents. Thus, when the complaint is read together with the testimony at trial, it is clear that any acts of detaining Willoughby, if indeed there were any, were performed by Duvall.

It is well established that in order to establish the tort of false imprisonment a plaintiff has the burden of proof to establish that he was intentionally and unlawfully restrained against his will. *Stowers v Wolodzko,* 386 Mich 119; 191 NW2d 355 (1971). Because plaintiffs did not specifically allege in their complaint that Lehrbass did any act which resulted in the detention of young Willoughby in Duvall's office and because the proofs showed that Lehrbass soon left Duvall's office, it would appear that no cause of action regarding false imprisonment exists against Lehrbass.

Therefore, although the trial judge may have incorrectly granted summary judgment in favor of Lehrbass on count IV on the basis of governmental immunity, nevertheless, because the result was appropriate, reversible error did not occur. *Albro v Total Petroleum, Inc,* 108 Mich App 1; 310 NW2d 252 (1981). Hence, summary judgment in favor of defendant Lehrbass was appropriately entered.

Having found no error mandating reversal, the judgment of the trial court is affirmed. No costs.