FARM BUREAU MUTUAL INSURANCE COMPANY v WOOD

REAS v WOOD

Docket Nos. 91223, 91264. Submitted October 6, 1987, at Grand
Rapids. Decided December 8, 1987.

In 1974, Ronald and Sarah Wood employed Beuford Way and
Gordon Bushen to make repairs on an artesian well on their
property. In August, 1978, the Woods sold the property to
Richard and Rose Reas. At that time, there were no visible
signs of the past problem with the well and a dispute exists as
to whether the Reases were informed of the problem. A prob-
lem again developed with the well in May, 1980. Due to
damage to the home, the Reases moved out. They subsequently
brought an action against the Woods. Farm Bureau Mutual
Insurance Company, the Reases' homeowner's insurance car-
rier, paid $11,954.54 in attempts to repair the well and clean
the home. Because the repairs were unsuccessful, Farm Bureau
also paid the Reases an additional $28,000 for the loss of their
home. Farm Bureau then also filed suit in the Oceana Circuit
Court, as subrogee of the Reases, to recover the amounts paid.
Named as defendants were the Woods, Bushen and Way. The
jury returned a verdict in favor of Farm Bureau and the Reases
and against the Woods. The jury awarded $28,000 in damages
to Farm Bureau and $15,000 to the Reases. The jury found no
cause of action against Bushen and Way. No appeal has been
taken from the judgment regarding Bushen and Way. The
Woods moved for a judgment notwithstanding the verdict and

REFERENCES

Am Jur 2d, Judgments §§ 106 et seq.

Am Jur 2d, Motions, Rules, and Orders § 26.

Am Jur 2d, Sales §§ 835, 836, 1189 et seq.

Am Jur 2d, Witnesses §§ 656 et seq.

Construction and effect of affirmative provision in contract of sale
by which purchaser agrees to take article "as is," in the condition
in which it is, or equivalent term. 24 ALR3d 465.

Practice and procedure with respect to motions for judgment not-
withstanding or in default of verdict under Federal Civil Proce-
dure Rule 50(b) or like state provisions. 69 ALR2d 449.

Comment Note.—Credibility of witness giving uncontradicted testi-
mony as matter for court or jury. 62 ALR2d 1191.

Farm Bureau filed a motion for additur in the amount of $11,954.54. The trial court, Terrence R. Thomas, J., denied the motion for additur and entered an order setting aside the jury verdict and granting judgment notwithstanding the verdict. Farm Bureau and the Reases appealed from that order. Farm Bureau also appealed from the order denying its motion for additur. The appeals were consolidated by the Court of Appeals.

The Court of Appeals *held:*

1. The trial court improperly acted as a factfinder in granting the JNOV because the Reases and Farm Bureau produced sufficient evidence, as a matter of law, to make an issue for the jury on each of the essential elements of their claim against the Woods. The order granting JNOV is vacated and the jury verdict is reinstated.

2. The trial court did not squarely address the issue of additur. It is appropriate to remand for consideration of the additur motion.

Reversed and remanded.

1. JUDGMENTS — JUDGMENT NOTWITHSTANDING THE VERDICT.

A trial court deciding a motion for a judgment notwithstanding the verdict must view the evidence in a light most favorable to the nonmoving party, giving the nonmoving party the benefit of every reasonable inference that can be drawn from the evidence; if the evidence is such that reasonable persons could differ, the question is one for the jury and judgment notwithstanding the verdict is improper; a judgment notwithstanding the verdict may be granted only where there is insufficient evidence, as a matter of law, to make an issue for the jury.

2. SALES — "AS IS" CONTRACTS — CONCEALED DEFECTS.

The buyer generally bears the risk of loss under an "as is" contract unless the seller fails to disclose concealed defects known to him.

3. PROPERTY — LAND SALES — CONCEALED DEFECTS.

Caveat emptor prevails in land sales and the vendor is not liable for any harm due to defects existing at the time of sale; an exception to this rule exists which provides that it is the vendor's duty to disclose to the purchaser any concealed condition known to him which involves an unreasonable danger; knowledge of the defect on the part of the purchaser relieves the vendor of any duty or liability.

4. WITNESSES — CREDIBILITY.

The credibility of witnesses is a matter within the province of the jury.

5. MOTIONS AND ORDERS — ADDITUR — APPEAL.
   The standard for determining whether to grant a motion for
   additur is whether the verdict is so clearly or grossly inade-
   quate and so contrary to the great weight of the evidence as to
   shock the judicial conscience of the trial court; this determina-
   tion is left to the trial court's discretion and will not be
   reversed on appeal absent a palpable abuse of discretion.

*Dilley, Dewey & Waddell, P.C.* (by *Jonathan S. Damon*), for Farm Bureau Mutual Insurance Company.

*Norman C. Halbower, P.C.* (by *Norman C. Halbower*), for the Reases.

*Cholette, Perkins & Buchanan* (by *Robert E. Attmore* and *Calvin R. Danhof*), for the Woods.

Before: SAWYER, P.J., and CYNAR and J. E. MIES,* JJ.

PER CURIAM. Plaintiffs, Farm Bureau Mutual Insurance Company, Richard Reas and Rose Ann Reas, appeal as of right from an opinion and order of the Oceana Circuit Court which granted defendants Ronald and Sarah Wood's motion for judgment notwithstanding the verdict and overturned a jury award in favor of Farm Bureau and the Reases. In addition, Farm Bureau appeals from the circuit court order denying its motion for additur of the jury award. We reverse.

These two consolidated cases involve claims for damages for the alleged fraudulent concealment of latent defects in real property by the vendors of that property, defendants Ronald and Sarah Wood. The Reases instituted suit against the Woods when an artesian well on the property erupted in 1980 causing significant damage to the land and to the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

home. Farm Bureau, the Reases' homeowner's insurance carrier, paid for the cost of repairing the property under the policy and filed suit, as subrogee of the Reases, to recover the amounts paid.

At trial, Ronald Wood testified that he purchased the subject property in August, 1973, from a Mrs. Thompson. The property is located adjacent to the White River in Hesperia, Michigan. An artesian well on the property supplied water to the Wood's home as well as four other homes. In March, 1974, the well erupted, causing water, sand and mud to flood the basement and substantially damage the home. The eruption was attributed to the wearing out of the pipe casing due to rust and the erosion effect of sand running through the pipes.

After the eruption, Mr. Wood called defendant Beuford Way, who in turn brought defendant Gordon Bushen, to repair the well. Way and Bushen vented the overflow of the water to the White River and sealed off the well. Allegedly, these repairs were only temporary. Way and Bushen did not offer the Woods any guarantees that these repairs would solve the problem. As a matter of fact, due to the rusting of the pipe's casing, problems with eruption were possible in the future. The well drillers advised Mr. Wood that permanent repairs (i.e., pressure-cementing the old well and sinking a new one) could be done at a cost of $2,000 to $10,000. The drillers were never called back to perform any permanent repairs. Bushen apparently told the Woods that permanent repairs were not really necessary unless problems recurred in the future and the well, if not "molested" (restricted in the water flow), could provide a reasonable lifetime of use.

Following the eruption, the Woods tapped into a neighbor's well for their water supply, cleaned up

the damage and mess caused by the eruption, and relandscaped the premises such that no visible signs of the eruption were apparent.

The Woods sold the property in August, 1978, to the Reases. At that time, there were no visible signs of the past flooding or problems with the well. There was great dispute amongst the parties whether the Reases were ever informed of, or were otherwise aware of, the 1974 well eruption. The Reases both testified that the Woods never told them of the previous flooding or the potential future problems with the well. The Reases maintained that they had no knowledge whatsoever about the 1974 eruption.

Ronald Wood stated that, in the course of selling the house to the Reases, he told them about the 1974 eruption. He also informed the Reases about the repairs on the well and advised them that the water flow should not be restricted and that water could be safely transported only by means of a pump. Mrs. Wood testified that she showed Mrs. Reas pictures of the 1974 flooding before the home was sold. Mrs. Reas said that she saw the pictures after a second eruption took place.

The second eruption occurred in May, 1980. Two months prior, Mr. Reas had reconnected the well to the house. Mr. Reas acknowledged that he knew the well was not connected at the time of the sale. In fact, a $1,000 price reduction was negotiated between the parties because of the unconnected well. On the day of the eruption, Mr. Reas had just completed a landscaping project in the well's vicinity. Using a truck and snowplow, Mr. Reas moved a truckload of dirt, deposited it within thirty feet of the well and leveled a nearby hill. Shortly after this, Mr. Reas heard the ground rumble and flooding commenced.

Numerous attempts were made to obtain the

services of a well driller to stop the flooding. When a driller was finally found, the repair efforts were unsuccessful because of the difficulty in locating the pipe. The flooding was eventually brought under control. Due to the eruption, the home was undermined, a huge hole formed in the ground around the artesian well (into which the wellhouse collapsed), cracks developed in the home's foundation, and water permeated into the basement. Because of this damage, and out of concern for their safety, the Reases moved out of the home.

Plaintiff Farm Bureau paid for the several attempts to repair the well and for the costs of cleaning the home in the amount of $11,954.54. Because the repairs were unsuccessful, Farm Bureau also paid the Reases an additional $28,000 for the loss of their home. As a result of the flooding, the property experienced a $36,900 reduction in value.

Following the trial, the jury, using a special verdict form, returned a verdict in favor of Farm Bureau and the Reases and against the Woods. Farm Bureau and the Reases were found to have no cause of action against Way and Bushen. The latter verdict was incorporated into a judgment from which no appeal was taken. The jury awarded $28,000 in damages to Farm Bureau and $15,000 to the Reases.

On August 28, 1985, the Woods moved for a JNOV, alleging, inter alia, that the jury verdict should be set aside because plaintiffs failed to prove by clear and convincing evidence that the Woods concealed or knew of the property's dangerous condition, or that the Reases were otherwise unaware of this condition. On September 9, 1985, Farm Bureau filed a motion for additur in the amount of $11,954.54, the amount spent by Farm

Bureau for repairs, but which the jury did not include in its damage award.

A hearing on both motions was held on September 23, 1985. The court reserved ruling on the JNOV and denied Farm Bureau's motion for additur.

Regarding the JNOV motion, on February 7, 1986, the trial court issued a written opinion. The judge stated that he was not satisfied that plaintiffs proved by clear and convincing evidence that the Woods fraudulently concealed any latent defect in the well. The judge indicated that the evidence showed that the Woods told the Reases everything they knew concerning the well. Additionally, the court was not convinced that the well constituted an unreasonable danger. Rather, the well erupted due to the natural erosion of the pipe casing and the reconnection of the well by the Reases.

In accordance with the foregoing opinion, on February 28, 1986, the court entered an order setting aside the jury verdict and granting JNOV. The instant appeal followed.

Farm Bureau and the Reases argue that the trial court improperly acted as a factfinder in granting JNOV on behalf of the Woods, because the plaintiffs produced substantial evidence on each of the essential elements material to their claim against defendants.

In *Slanga v Detroit,* 152 Mich App 220, 224; 393 NW2d 487 (1986), this Court stated that, when a trial court is deciding a motion for a JNOV, the court must view the evidence in a light most favorable to the nonmoving party, giving the nonmoving party the benefit of every reasonable inference that could be drawn from the evidence. If the evidence is such that reasonable persons could differ, the question is one for the jury and JNOV is

improper. A JNOV may be granted only where there is insufficient evidence, as a matter of law, to make an issue for the jury. *Willoughby v Lehrbass,* 150 Mich App 319, 344; 388 NW2d 688 (1986); *Murphy v Muskegon Co,* 162 Mich App 609; 413 NW2d 73 (1987).

Plaintiffs' causes of action against the Woods were based on the principle announced in *Christy v Prestige Builders, Inc,* 415 Mich 684; 329 NW2d 748 (1982). In *Christy,* our Supreme Court held that, generally, the buyer bears the risk of loss under an "as is" contract unless the seller fails to disclose concealed defects known to him. Caveat emptor prevails in land sales, and the vendor, with two exceptions, is not liable for any harm due to defects existing at the time of sale. *Id.,* p 694.

The first exception, which is relevant here, is the vendor's duty to disclose to the purchaser any concealed condition known to him which involves an unreasonable danger. Failure to make such a disclosure or efforts to actively conceal a dangerous condition render the vendor liable for resulting injuries. However, knowledge of the defect on the part of the purchaser relieves the vendor of any duty or liability. *Id.,* pp 694-695. See also *Stewart v Isbell,* 155 Mich App 65, 75; 399 NW2d 440 (1986).

Thus, in order to prevail, plaintiffs were required to prove the following: (1) at the time of the sale, there was a concealed condition on the property which involved an unreasonable danger; (2) this condition was known to the Woods; and (3) the Reases had no knowledge of this defect. Viewing the evidence in a light most favorable to plaintiffs, we conclude that there was sufficient evidence, as a matter of law, to make an issue for the jury on each of the foregoing requisite elements.

As to the first element, the evidence revealed

that the 1974 eruption caused extensive damage to the home. There were sink holes that continuously formed in the yard. A neighbor woman slipped into one of those holes which had become covered as a result of fallen leaves. Bushen and Way both stated that there was a real possibility that the 1974 eruption could have washed away earth around and under the basement. Jerry Frick, a well driller who attempted to repair the well after the 1980 eruption, considered the well "a bomb ready to explode" following the 1974 eruption. With this evidence, plaintiffs presented an issue for the jury's consideration whether the defect posed an unreasonable danger.

There was also ample testimony to create a jury question regarding whether the Woods were aware of the well's defective condition. Both Bushen and Way testified that they told Mr. Wood that the repairs were temporary and that there was no guarantee the problem would not recur in the future. Although Mr. Wood denied ever being told about future problems, the evidence was such that reasonable persons could differ, and, hence, the question was properly before the jury.

As to the final element, there was sufficient evidence to defeat the JNOV motion. This element, which was vehemently disputed at trial, involved the question whether the Woods disclosed to the Reases the problems with the well. Defendants claimed that they advised the Reases of the defect. Mrs. Wood testified that she showed Mrs. Reas photographs of the 1974 eruption.

The Reases, on the other hand, denied any knowledge about the well. They testified that the property was well kept and landscaped to the point where there were no visible signs of well problems. Clearly, on this element, the court exceeded its authority by choosing to disbelieve the

Reases' testimony in favor of the Woods. It is well settled that the credibility of witnesses is a matter within the province of the jury. *Johnson v Corbet,* 423 Mich 304, 314; 377 NW2d 713 (1985). Thus, the order granting the Woods' JNOV motion is vacated and the jury verdict is reinstated.

Farm Bureau also argues that the court erroneously denied its motion for additur. Farm Bureau alleges that it spent $39,954.54 for the loss on the property. The jury awarded it only $28,000. It is contended that this Court should adjust the damage award and include the additional $11,954.54 which Farm Bureau spent on the repairs of the home after the 1980 eruption.

At trial, Farm Bureau presented little proof on damages it allegedly incurred in making payment to its insured due to the 1980 eruption. Various defendants agreed that they would not object to Farm Bureau's proof of loss. However, there was never an agreement to stipulate to the damages.

The standard for determining whether to grant a motion for additur is whether the verdict is so clearly or grossly inadequate and so contrary to the great weight of the evidence as to shock the judicial conscience of the trial court. *Moore v Spangler,* 401 Mich 360, 373; 258 NW2d 34 (1977). This determination is left to the discretion of the trial court and will not be reversed on appeal absent a palpable abuse. *Id.,* p 372.

At the conclusion of the September 23, 1985, hearing, the trial court took the motion for JNOV under advisement. On February 7, 1986, the trial court granted the motion for JNOV and on February 28, 1986, an order was entered pursuant to the opinion. Additionally, at the conclusion of the September 23, 1985, hearing, concerning the motion for additur, the trial court observed that no

one challenged payment of $11,954.54 by Farm Bureau, but that is as far as it went, and, for the reasons stated, the motion for additur was denied. However, on February 7, 1986, in a one-sentence opinion, the motion for additur was denied because of the grant of the JNOV.

The court did not squarely address the issue of additur. Because we are reversing on the JNOV ruling, we deem it appropriate to remand the case to the lower court for consideration of the additur motion.

Reversed and remanded. We do not retain jurisdiction.