## ROBINS v KATZ

Docket No. 83198. Submitted March 13, 1986, at Detroit. Decided May
20, 1986. Leave to appeal applied for.

Plaintiff, Anne Robins, brought an action in the Wayne Circuit
Court against Stuart Katz, M.D., alleging malpractice arising
out of surgery performed by defendant upon plaintiff's foot. The
court, Henry J. Szymanski, J., granted judgment on a jury
verdict for plaintiff. Defendant appealed, alleging instructional
error. *Held:*

1. A trial court has discretion to give or refuse to give
requested Standard Jury Instructions. It is for the trial court to
determine when a standard instruction is applicable, not in an
abstract or theoretical sense, but in the context of the particu-
lar case with due regard for the parties' theories of the case
and counsel's legitimate desire to structure final argument in
relation to anticipated jury instructions.

2. Mitigation of damages is not an issue for the jury where
the evidence is too problematical and conjectural. Whether
there is a duty to mitigate damages by submission to corrective
surgery is determined by an assessment of the probability of
being successful in light of the pain, expense and effort in-
volved. A victim of medical malpractice involving surgery
should not ordinarily be required to suffer the undoubted
physical and psychological pain and suffering of further sur-
gery in the absence of a virtual guarantee of success. Plaintiff
had no such guarantee and, in fact, was advised not to have the
surgery by her doctor. The court did not err in refusing to give
a mitigation of damages instruction concerning plaintiff's re-
fusal to submit to corrective surgery.

3. Defendant was not entitled to an instruction to the effect
that the Standard Table of Mortuary was not conclusive in this

REFERENCES

Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 103, 296-
298, 361-366, 371.

Duty of medical practitioner to warn patient of subsequently discov-
ered danger from treatment previously given. 12 ALR4th 41.

See also the annotations in the ALR3d/4th Quick Index under
Malpractice.

case due to plaintiff's rheumatoid arthritis. There was no evidence on the effect of rheumatoid arthritis on life expectancy.

4. A trial court need not give a requested instruction which would not add anything to an otherwise balanced and fair jury charge nor enhance the ability of the jurors to decide the case intelligently, fairly, and impartially. The trial court did not err in refusing to give defendant's requested instruction on the appropriate test for informed consent, since defendant testified that he fully informed plaintiff and plaintiff testified that he did not. Thus, the issue was who did the jury believe, not what was the appropriate standard for informed consent.

5. The court properly denied defendant's requested instruction that no medical practitioner can be required to guarantee results.

Affirmed.

1. TRIAL — STANDARD JURY INSTRUCTIONS.

A trial court has discretion to give or refuse to give a requested Standard Jury Instruction; it is for the trial court to determine when a standard instruction is applicable, not in an abstract or theoretical sense, but in the context of the particular case with due regard for the parties' theories of the case and counsel's legitimate desire to structure final argument in relation to anticipated jury instructions (MCR 2.516).

2. DAMAGES — MITIGATION OF DAMAGES — EVIDENCE — CORRECTIVE SURGERY.

Mitigation of damages is not an issue for the jury where the evidence is too problematical and conjectural; whether there is a duty to mitigate damages by submission to corrective surgery is determined by an assessment of the probability of being successful in light of the pain, expense and effort involved.

3. NEGLIGENCE — MEDICAL MALPRACTICE — MITIGATION OF DAMAGES — CORRECTIVE SURGERY.

A victim of medical malpractice involving surgery should not ordinarily be required to suffer the undoubted physical and psychological pain and suffering of further surgery in the absence of a virtual guarantee of success.

4. TRIAL — JURY INSTRUCTIONS.

A trial court need not give a requested instruction which would not add anything to an otherwise balanced and fair jury charge nor enhance the ability of the jurors to decide the case intelligently, fairly, and impartially.

*Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen & Bartnick* (by *Kay Honigman-Singer*), for plaintiff.

*MacArthur, Cheatham, Acker & Smith, P.C.* (by *Lawrence J. Acker* and *James G. Gross*), for defendant.

Before: BRONSON, P.J., and R. B. BURNS and J. E. TOWNSEND,[*] JJ.

PER CURIAM. Defendant, Stuart Katz, M.D., appeals as of right from a Wayne Circuit Court jury verdict which found defendant liable for medical malpractice and rendered an award of $200,000 in favor of the plaintiff. The plaintiff's medical malpractice claim arose out of surgery performed by the defendant on plaintiff's right foot. On appeal, defendant raises four alleged instructional errors in giving the case to the jury which defendant claims require reversal.

At the time of the surgery, plaintiff was forty-one years old and suffering from rheumatoid arthritis. She was referred to the defendant, an orthopedic surgeon, by her rheumatologist who was a member of the same professional corporation as defendant. The primary purpose of the surgery was to alleviate pain in the plaintiff's right foot. Following surgery, plaintiff's foot was slow to heal and caused her constant pain. Dr. Collen, an orthopedic surgeon who saw plaintiff some fourteen months after the surgery, diagnosed her major pain as resulting from entrapment of a cutaneous nerve on the top of her right foot, which was caused by the surgery perfomred by defendant. Further, plaintiff's right foot was two sizes smaller than her left foot after the surgery.

---

[*] Circuit judge, sitting on the Court of Appeals by assignment.

At trial, the plaintiff alleged that (1) defendant performed unnecessary surgery on her foot, (2) plaintiff was not informed of all the risks and complications of the surgery, and (3) conservative treatment was a viable alternative to surgery. It was not disputed that plaintiff signed a consent form for the surgery, but rather it was argued that she was never informed of the risks and complications inherent in the procedure. The jury returned a unanimous general verdict for the plaintiff.

Defendant's first claim of instructional error concerns the trial court's refusal to give SJI2d 53.05 and the related definitional instructions in SJI2d 10.01-10.04, concerning mitigation of damages and failure to exercise ordinary care. The proposed mitigation instruction provides:

> A person has a duty to use ordinary care to minimize his or her damages after [*he or she/his or her property*] has been [*injured/damaged*]. It is for you to decide whether plaintiff failed to use such ordinary care and, if so, whether any damage resulted from such failure. You must not compensate the plaintiff for any portion of [*his/her*] damages which resulted from [*his/her*] failure to use such care. [SJI2d 53.05.]

The use note to SJI2d 53.05 provides the caveat that the instruction should not be given unless there is evidence creating an issue as to whether plaintiff failed to use ordinary care to minimize his or her injury or damage.

Defendant argued below and again in this appeal that plaintiff's refusal to have allegedly minor corrective surgery with *might* have corrected the cutaneous nerve entrapment which was causing her pain raised a question of fact for the jury as to whether plaintiff had failed to mitigate her damages.

The defendant described the corrective procedure as minor out-patient surgery under local anesthetic. He testified that the surgery takes less than thirty minutes, is very simple and "quite rewarding as far as relief of pain." However, Dr. Katz also agreed that there was no guarantee that the procedure would correct the problem.

Plaintiff's expert, Dr. Touchton, a podiatrist, thought that surgery possibly could benefit plaintiff, but found the prospect of improvement speculative because, "with excessive scar tissue, cutting into the area again tends to promote more scar tissue which might affect the results of the surgical procedure." Dr. Touchton added that he thought he had discussed the possibility of surgery with plaintiff, but:

> I felt that we should stabilize the [sic] part of her feet, and I was unable the [sic] give her any assurances if we performed my surgery that it would have helped her pain syndrome. So, I did not—*I actually recommended against surgical procedures at that time.* [Emphasis added.]

· Numerous other experts also testified concerning the procedure. Basically, all agreed that there were no guarantees that the surgery would alleviate the problem but that technically it was not a very complicated procedure. Further, Dr. Weitzman, an associate of the defendant, indicated that people with rheumatoid arthritis oftentimes have delayed wound healing and they have decreased ability to resist infections. When asked why she did not have this further surgery done, plaintiff stated that she "was afraid to let anybody touch [her] foot" because she "was afraid of more infections."

The trial court refused the instruction, stating

that plaintiff's fears about undergoing the surgery
were legitimate based upon her previous experi-
ence with surgery, her rheumatoid arthritis, and
the possibility that the surgery might not be suc-
cessful. Essentially, the court concluded that there
was insufficient evidence upon which the jury
could have found that plaintiff failed to use ordi-
nary care to minimize her damages. Our review of
the record convinces us that the trial court did not
err in refusing to give the defendant's requested
mitigation instruction.

In *Johnson v Corbet,* 423 Mich 304; 377 NW2d
713 (1985), and *Moody v Pulte Homes, Inc,* 423
Mich 150; 378 NW2d 319 (1985), our Supreme
Court recently reconsidered the duty of trial
courts to give requested Standard Jury Instruc-
tions. In modifying the strict rule it had previously
set forth in *Javis v Ypsilanti Bd of Ed,* 393 Mich
689; 227 NW2d 543 (1975), the Court held that
whether a requested instruction should now be
given is left to the sound discretion of the trial
court. The Court indicated that henceforth, "it is
for the trial court to determine when the sji are
applicable, not in an abstract or theoretical sense,
but in the context of the 'personality' of the partic-
ular case in trial, and with due regard for the
adversaries' theories of the case and counsel's
legitimate desire to structure jury argument
around anticipated jury instructions." 423 Mich
327. Thus, the Court concluded that it is conceiva-
ble that a requested instruction would be applica-
ble but that the trial court could refuse to give it,
based on the unique facts of the individual case.

The comment to SJI2d 53.05 suggest that the
cases hold that the duty to minimize damages may
include a duty to seek and follow medical treat-
ment, including surgery which does not involve
danger to life or extraordinary suffering. However,

in *Sullivan v Pittsburg Steamship Co,* 230 Mich 414, 423; 203 NW 126 (1925), our Supreme Court stated that, when evidence on the issue of mitigation is too problematical and conjectural, it is not an issue to be submitted to the jury. More recent authority seems to employ a balancing test to determine whether there is a duty to minimize damages, based on an assessment of whether the medical procedure stands a high probability of being successful in light of the pain, expense and effort involved in the corrective surgery. See, e.g., *Klanseck v Anderson Sales & Service, Inc,* 136 Mich App 75, 85; 356 NW2d 275 (1984), lv granted 422 Mich 934 (1985); *Earls v Herrick,* 107 Mich App 657, 667-668; 309 NW2d 694 (1981); see also Anno: *Duty of injured person to submit to surgery to minimize tort damages,* 62 ALR3d 9.

In this case, we hold that the trial court's decision not to give the mitigation instruction was correct. The evidence concerning whether the corrective surgery would have been successful was problematical and equivocal at best. Certainly, it did not rise to the level of a high probability of success. Given the risks inherent in any surgery, as well as the plaintiff's individual situation, it cannot be said that an ordinarily reasonable person under all the circumstances would have submitted to the surgery.

Further support for the conclusion that the instruction was properly denied is found in the fact that plaintiff's own treating doctor recommended against the surgery. A patient is entitled to rely on the recommendation of the treating physician. There was no guarantee of success if the procedure was performed, and the plaintiff's own fear of undergoing another procedure was certainly justified given the results of the prior surgery. We believe that the victim of medical

malpractice involving surgery should not ordinarily be required to suffer the undoubted physical and psychological pain and suffering of further surgery in the absence of a virtual guarantee of success. Here, no such assurance existed. Therefore, the plaintiff was justified in refusing to consent to an additional invasion of her body in order to possibly diminish the responsibility of the wrongdoer for the consequences of his actions. The mitigation instruction was simply not warranted in this case and therefore was properly denied.

The defendant next argues that it was reversible error for the court to deny his request for the nonconclusive form of SJI2d 53.01 concerning the use of the Standard Table of Mortality, MCL 500.834; MSA 24.1834. Defendant asserts that the jury should not have been told that the mortality table is conclusive because there was medical testimony that plaintiff was not an ordinarily healthy woman because she suffered from rheumatoid arthritis, a systemic, progressive disease. We disagree.

Despite defendant's contention that the SJI requested was patently applicable, we agree with the trial court that there was no direct testimony on the precise question of the impact of plaintiff's rheumatoid arthritis on her life expectancy. Defendant was not entitled to his requested instruction, absent testimony as to the effect of plaintiff's rheumatoid arthritic condition on plaintiff's life expectancy. We believe that the question of the applicability of this type of jury instruction is precisely what our Supreme Court was referring to in its opinion in *Johnson v Corbet, supra.* The determination on the applicability of the requested instruction required an exercise of discretion by the trial court. The record in this case demonstrates an exercise of that discretion, and we find

no abuse of discretion which would require reversal.

Defendant's third claim of instructional error concerns the issue of informed consent. The trial court refused to give the following supplemental instruction requested by the defendant:

> Before liability will be imposed on a physician for failure to obtain an informed consent, the patient must prove that a reasonably prudent patient under similar circumstances would not have consented to the treatment if informed of such material fact or facts.

Thus, defendant was requesting a "reasonable patient" or "objective" test for proximate cause as opposed to a subjective test, which focuses on whether the particular plaintiff would have consented to the operation. The trial court determined that the reasonable patient theory was not applicable in Michigan.

It is undisputed that a physician has a duty to warn a patient of the consequences of a medical procedure. *Lincoln v Gupta,* 142 Mich App 615, 625; 370 NW2d 312 (1985). However, no Michigan cases have been found which have analyzed whether the duty to disclose in a medical malpractice case should be tested by an "objective" or "subjective" standard. Relying on cases from other jurisdictions, the defendant urges us to adopt the reasonably prudent patient standard for causation in cases involving informed consent. See *Canterbury v Spence,* 150 US App DC 263, 271; 464 F2d 772, 780 (1972).

We find it unnecessary to determine whether the objective or subjective standard should be applied in informed consent cases in general. In this case, the question of informed consent was nothing more than a credibility contest. Dr. Katz testified that he fully informed plaintiff of the

risks associated with the surgery. The plaintiff stated that he neither informed her of the risks nor informed her of the possibility of more conservative methods short of surgery.

In *Johnson v Corbet, supra,* the Court indicated that a requested instruction need not be given if the instruction would "simply add nothing to an otherwise balanced and fair jury charge nor enhance the ability of the jurors to decide the case intelligently, fairly, and impartially." 423 Mich 327. Here, rather than alleviating the problems inherent in this type of credibility contest, the objective reasonably prudent patient theory urged by defendant would instead have added an additional factual inquiry, creating more confusion and guesswork in the jurors' discharge of their duty. Further, we believe that the jury necessarily considers the reasonableness of plaintiff's behavior when it assesses her credibility vis-à-vis that of the doctor. Accordingly, we find no error in the court's refusal to give the defendant's requested supplemental informed consent instruction concerning the reasonably prudent patient test.

Finally, defendant also unsuccessfully sought the jury instruction that no medical practitioner can be required to guarantee results. The trial court found that the theories introduced at trial did not support giving the instruction. We agree. Defendant's argument on appeal distorts the record. Our review of the record indicates that the arguments made by plaintiff were appropriate and do not indicate the applicability of a guarantor instruction. Therefore, the trial court properly denied the defendant's requested supplemental instruction.

Having found no error which requires reversal, we accordingly affirm the judgment of the trial court.

Affirmed.