SELLS v MONROE COUNTY

Docket No. 84284. Submitted December 4, 1986, at Detroit. Decided February 9, 1987.

Floyd L. Sells, Jr., administrator of the estate of Joel Sells, brought a wrongful death action against the County of Monroe and Edward Burns, a Monroe County deputy sheriff. Joel Sells died when the automobile which he was driving was struck by the police car being driven by defendant Burns. At the time of the accident, the police car was being operated in excess of the posted speed limit with its lights and siren activated, Burns and his partner having been dispatched to the scene of a head-on accident. Of the eight eyewitnesses to the accident, seven of them, including Burns and his partner and two other officers who happened to be traveling in the direction opposite to Burns, testified that the deceased pulled his automobile directly into the path of the police vehicle. Four of those witnesses were permitted to testify that it was impossible for Burns to do anything to avoid the accident. The passenger in the deceased's automobile testified that the deceased had used due care before pulling into the street in front of the police vehicle, although the witness also admitted that he had not checked the traffic himself. The jury returned a verdict of no cause of action. Plaintiff appealed.

The Court of Appeals *held:*

1. The trial court did not err in excluding evidence that the state police had already reached the scene of the accident to which Burns was driving. A police officer may exceed the posted speed limit where he is proceeding to what he reasonably believes to be an emergency situation. Evidence that the emergency to which Burns was proceeding may not have still

REFERENCES

Am Jur 2d, Contracts §§ 1, 5.
Am Jur 2d, Damages §§ 212, 214, 215, 218, 219, 221.
Am Jur 2d, Interest and Usury § 20.
Liability of person furnishing, installing, or servicing burglary or fire alarm system for burglary or fire loss. 37 ALR4th 47.
See also the annotations in the Index to Annotations under Adhesion Contracts.

existed because of the arrival of the state police was not relevant evidence, since there was no evidence that Burns was aware of the new circumstances and thus the changed state of facts had no bearing on the question of whether he reasonably believed that he was responding to an emergency.

2. Lay witnesses may give opinion testimony as long as the opinion is rationally based on the perception of the witness and helpful to a clear understanding of the testimony or the facts in issue. There is no requirement that a witness observe the accident from the same perspective as the parties to the accident before expressing an opinion as to whether the accident was avoidable.

3. The trial court did not err in refusing to give the presumption of due care of a deceased person instruction, since that presumption was clearly rebutted by uncontroverted, direct, positive and credible evidence that the deceased failed to use due care in entering upon the street. The testimony of the passenger in the deceased's automobile that the deceased had used due care was insufficient to require the due care instruction, since the testimony of that witness also clearly established that he had not himself observed the traffic on the street at the time the deceased entered the street.

4. The record fails to support the claim that the trial court erred in refusing to instruct the jury on last clear chance.

5. Error mandating reversal did not result from the refusal of the trial court to give the standard criminal jury instruction relative to the credibility of police witnesses. The instructions given by the trial court relative to witness credibility were adequate.

Affirmed.

1. AUTOMOBILES — EMERGENCY VEHICLES — TRAFFIC REGULATIONS — EVIDENCE.

A police officer is statutorily permitted to exceed the speed limit where the officer reasonably believes that he is responding to an emergency call; evidence that the emergency no longer existed at the time the officer's automobile collided with another automobile is not admissible in a tort action for injuries sustained in the collision unless it can be shown that the police officer was aware that the emergency no longer existed (MCL 257.603[b]; MSA 9.2303[b]).

2. WITNESSES — LAY WITNESSES — OPINION TESTIMONY.

Opinion testimony by a lay witness is admissible if it is rationally based on the perception of the witness and is helpful to a clear understanding of his testimony or a fact in issue; an eyewitness

to an automobile collision need not view the collision from the same perspective as the driver of the automobile in order to give an opinion as to whether the collision was unavoidable so long as the opinion is rationally based on the perception of the witness (MRE 701).

3. TRIAL — JURY INSTRUCTIONS — STANDARD JURY INSTRUCTIONS.

A standard jury instruction must be given when it is applicable, accurate, and requested by a party; the determination of a requested instruction's applicability is within the discretion of the trial court.

4. TRIAL — JURY INSTRUCTIONS — PRESUMPTION — DECEASED PERSONS — DUE CARE.

The standard jury instruction relative to the presumption of due care by a deceased party need not be given where there is uncontroverted, direct, positive and credible evidence which rebuts the presumption (SJI 10.08).

5. TRIAL — JURY INSTRUCTIONS — LAST CLEAR CHANCE.

It is not error for a trial court to refuse to instruct on the doctrine of last clear chance where the uncontroverted evidence at trial indicated that the plaintiff's deceased pulled his automobile directly out in front of the defendant's automobile and left defendant no opportunity to avoid the collision (SJI 14.01).

*D'Avanzo, Danko & Aycock* (by *Jerry P. D'Avanzo*), for plaintiff.

*Braunlich, Russow & Braunlich* (by *William J. Braunlich, Jr.*), for defendants.

Before: DANHOF, C.J., and SHEPHERD and W. A. PORTER,* JJ.

PER CURIAM. Plaintiff appeals from the judgment of no cause of action entered March 29, 1985, by Monroe Circuit Court Judge James J. Kelley.

This case involves a wrongful death action in which plaintiff, Floyd Sells, sought to recover as administrator for the estate for the wrongful death of his son, Joel Sells. Joel Sells was killed when

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the automobile he was driving was struck by a police car driven by defendant Edward Burns, a Monroe County deputy sheriff, on Monroe Street near the Denniston Drive-In Theatre.

On the afternoon of the accident, Sells' friend, Dale Stephens, met Sells at his home. After Stephens arrived, the two decided to go to a local drive-in theatre. Before they left Sells' home, Sells poured some of his father's whiskey in a jar similar to a Mason jar, filling it about two or three inches. Sells took the whiskey to the theatre, and Stephens and Sells each drank about half of it while at the theatre. When they decided to leave the theatre, Sells drove to one of the theatre exits which was a narrow dirt road that brought traffic directly to Monroe Street, a four-lane road.

Stephens' deposition testimony indicated that Sells proceeded slowly along the exit road until he reached Monroe Street, where he stopped to look for traffic. Sells intended to proceed north, which necessitated a left-hand turn across the two southbound lanes of Monroe Street. Stephens testified that he had no recollection of anything that happened after the car stopped, before proceeding to Monroe Street, and that he had no recollection of looking to see if there was any traffic on Monroe Street.

Defendant Burns testified that he was on duty on January 17, 1976, and that his partner was Deputy Thomas Towne. At approximately 11:00 P.M. that evening, defendant was in the vicinity of K mart, approximately two miles from the Denniston Drive-In Theatre, when he received a radio dispatch from the dispatcher, Lavern Kurtz, that there was a head-on accident at Telegraph and Creek Road. After receiving the go-ahead to respond to the scene of the accident, defendant activated his lights and siren and proceeded north

on Monroe Street. Defendant was traveling between sixty and sixty-five miles per hour in the left lane closest to the center line. When defendant approached the drive-in theatre, the last thing he recalled was suddenly seeing the angle of two tail lights as if a vehicle had just pulled out in the road. Defendant tried to swerve to the right, into the curb lane, but was not successful and hit Sells' car.

Earlena and Daniel Woodbury, traveling south on Monroe Street, witnessed the accident. Both witnesses corroborated defendant's testimony that defendant was traveling with lights and siren activated northbound on Monroe when Sells' vehicle pulled out in front of defendant. These witnesses gave their opinion that defendant could not have avoided the accident even though he attempted to swerve to the right to avoid Sells' vehicle.

Officers Roger Troph and Robert Nietubicz also witnessed the accident. Troph and Nietubicz were traveling south on Monroe in a van located behind the Woodburys' vehicle. Troph's deposition testimony also corroborated defendant's testimony that Sells' vehicle pulled out at an angle across Monroe Street directly in front of defendant's vehicle, which was traveling north on Monroe with lights and siren activated. Sells' vehicle was approximately two or three lengths in front of defendant's vehicle when Sells pulled out of the driveway.

Officer Nietubicz's testimony corroborated Troph's as to the circumstances surrounding the accident. In addition, Nietubicz testified that, in his opinion, defendant did not have an opportunity to avoid the collision.

Helen Laboe testified that she viewed the accident from her kitchen window. Although she could not see defendant's car until right before the

collision, she testified that she heard the siren and was concerned when she saw Sells pull out of the theatre driveway. It was her opinion that defendant could not have avoided the accident.

The jury found that defendant was not negligent. We affirm.

Plaintiff argues that, because a major issue was the reasonableness of defendant's belief that he was responding to an emergency at the time of the accident, the trial court erred in excluding evidence that the state police had already responded to the alleged emergency accident and that attempts were made to notify defendant of the same. We disagree. Although the question whether defendant reasonably believed that he was responding to an emergency was relevant in determining whether defendant was justified in exceeding the speed limit under MCL 257.603(b); MSA 9.2303(b), it is our view that the evidence excluded by the trial court was not relevant to defendant's reasonable belief.

Plaintiff's theory was that, since the state police were already at the scene of the Telegraph and Creek Road accident, defendant was not responding to an emergency when the collision occurred between defendant and Sells and that, therefore, the evidence indicating that Officers Nietubicz and Troph had driven through the accident scene and knew that the state police were already responding should have been admissible to prove that defendant was not responding to an emergency at the time of the accident with Sells. In addition, plaintiff argues that Nietubicz and Troph's efforts to advise the dispatcher, Kurtz, and defendant that the state police were already at the scene of the Telegraph and Creek Road accident should have been admissible.

Although the excluded evidence is admittedly

relevant to the question whether an emergency still existed at Telegraph and Creek Road, the relevant test as stated in plaintiff's brief is not whether the emergency still existed, but whether defendant reasonably believed an emergency still existed. *Fiser v Ann Arbor,* 417 Mich 461; 339 NW2d 413 (1983), reh den 418 Mich 1201 (1984). Thus, the evidence indicating that the state police were already on the scene, and that Officers Nietubicz and Troph attempted to notify Kurtz and defendant of the same, was relevant to the issue of defendant's belief regarding the emergency status of the accident only if defendant knew that the state police were already on the scene.

Plaintiff failed to produce any evidence suggesting that defendant knew the state police were already at the scene, and admitted to the trial court that he did not have any direct evidence to support the contention. Instead, the undisputed evidence indicated that defendant had no knowledge that the state police had already responded to the scene of the accident. Defendant testified that, after receiving the dispatch to respond to the scene of an accident at Telegraph and Creek, he received no communication from Nietubicz and Troph, nor did Kurtz at any time indicate that the accident was no longer an emergency. Kurtz testified that he was unaware that the state police had already responded to the accident. Moreover, although Officers Nietubicz and Troph were aware that the state police had already responded to the scene and made attempts to notify Kurtz and defendant of this fact, the record indicates that Nietubicz and Troph were unable to contact either Kurtz or defendant to relay this information.

After reviewing the evidence, the trial court concluded that there was "no evidence anywhere in the case that defendant Burns had knowledge of

the state police being at the Telegraph-Creek Road accident," and therefore granted defendant's motion to exclude any evidence relating to the presence of the state police at the scene of the accident. Given the undisputed evidence that defendant was unaware of the presence of the state police at the scene of the accident, their presence was irrelevant to the reasonableness of defendant's belief that he was responding to an emergency. Therefore, the trial court did not abuse its discretion in excluding the evidence.

Plaintiff also argues that the trial court removed the question of the existence of an emergency from the jury's consideration. This contention is without merit. In addition to ruling the evidence regarding the presence of the state police inadmissible, the trial court ruled that whether defendant was on an emergency run was a factual question to be determined by the jury:

Based on this it would seem that whether the circumstances with which the officer—an officer, shall we say, is faced with an emergency, and therefore whether he's out on an emergency run, is a question of fact for the jury to determine.

In addition, plaintiff's counsel spent considerable time in closing arguing that defendant was not responding to an emergency when the accident occurred with Sells, thus indicating that the question was not decided by the trial court and taken away from the jury's consideration.

Plaintiff argues that the trial court erred in permitting lay witnesses to express the opinion that the accident was unavoidable because the witnesses did not perceive the situation from the same perspective as defendant. MRE 701 allows opinion testimony by a lay witness as long as the

opinion is rationally based on the perception of the witness and helpful to a clear understanding of his testimony or a fact in issue. *People v Smith,* 152 Mich App 756, 764; 394 NW2d 94 (1986). In addition, testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact. MRE 704; *People v Doan,* 141 Mich App 209, 214; 366 NW2d 593 (1985). Plaintiff concedes the substance of these rules. Plaintiff contends, however, that, before a lay witness may give testimony in the form of an opinion, the witness must first demonstrate that his perception of the incident was obtained from the same perspective as the defendant. We disagree.

Plaintiff does not cite, and we are unable to locate, any Michigan authority in support of the proposition that a layperson must perceive the situation from much the same perspective as the defendant before being allowed to testify as to opinions or inferences. Although there appears to be no specific Michigan authority addressing the exact question of under what circumstances a layperson must witness an accident before giving an opinion as to its avoidability, Michigan case law does suggest that an eyewitness to a collision is not required to have a visual perspective identical to another driver's before he can testify to the ultimate issue of that person's driving. In *Stillwell v Graubaugh,* 357 Mich 344; 98 NW2d 490 (1959), a witness to an automobile collision was allowed to testify that in his opinion the defendant could not have entered an intersection before the light turned against the defendant, even though the witness was not approaching the light from the same direction as the defendant, although he was traveling in the same direction as and next to the

plaintiff. In affirming the judgment, the Court stated:

> Control of such testimony is largely a matter of discretion with the trial court. Undoubtedly it is true that the witnesses should not in general be allowed to state conclusions, although this rule is qualified, and where a witness gives fully and definitely the facts upon which a conclusion is based, there is no presumption of prejudice.
>
> . . . The witness, having given the facts upon which the alleged conclusion was based, makes the statement more one of fact than a conclusion, and its admission was within the discretion of the court. [357 Mich 353. Citation omitted.]

See also *McDuffie v Root,* 300 Mich 286; 1 NW2d 544 (1942).

In addition, in deciding a similar issue, whether a witness is qualified to give an opinion as to the speed of an automobile involved in a collision, this Court stated in *Hicks v Bacon,* 26 Mich App 487, 494; 182 NW2d 620 (1970), lv den 384 Mich 784 (1970):

> [S]peed testimony should be admitted where the jury is made aware of the witness's opportunity to observe so that the admission of such testimony is not made contingent upon specific times or distances and the weight to be given this testimony is for the jury to decide.

Therefore, it is our opinion that an eyewitness to a collision need not view the collision from the same perspective as the driver before giving his opinion as to whether the accident was unavoidable. The test is whether the opinion is rationally based on the perception of the witness, not whether the opinion was based on the same perception as the defendant's. Hence, once a witness's

opportunity to observe is demonstrated, the opinion is admissible in the discretion of the trial court, and the weight to be accorded the testimony is for the jury to decide.

In the instant case, the trial court admitted over plaintiff's objections the testimony of four eyewitnesses that the accident was unavoidable. Prior to offering their opinions, all four witnesses testified to the facts upon which the opinions were based. Deputy Nietubicz testified to his opportunity to perceive defendant's car and its speed from his location, to defendant's attempt to swerve, to his view of Sells' car, and to the accident itself before giving the opinion that the police car did not have an opportunity to avoid the collision. Earlena Woodbury testified that she first saw defendant's car about one mile away, approaching her vehicle from the opposite direction. As she and defendant's cars approached each other, and before the accident took place, she saw Sells' car come out of the drive and exclaimed: "What is that fool doing?" Woodbury was of the opinion that the accident was unavoidable under the circumstances. Daniel Woodbury also testified to his first-hand description of the facts before indicating his opinion that defendant had no opportunity to avoid the collision. Helen Laboe also testified that she believed defendant's car could not have avoided the collision, but only after fully testifying as to her location at a window in her kitchen and as to her view and concern for Sells' vehicle pulling out of the driveway in light of the approaching police car.

Hence, because these four witnesses clearly indicated their opportunity to observe the accident and articulated the facts upon which their opinions were based, the trial court did not abuse its discretion in allowing their testimony as to the

avoidability of the accident. The opinions were clearly based on the witnesses' own perceptions and were helpful to the trier of fact in determining at what point Sells' car pulled out of the drive.

It should be noted that, although Laboe admittedly was in a location that did not enable her to see the approach of defendant's vehicle, thus discrediting her ability to determine whether defendant could have avoided the accident, plaintiff's counsel brought this fact out on cross-examination. In fact, plaintiff's counsel fully examined each witness as to their opportunity to observe and the facts on which they based their opinions. As this Court stated in *Hicks, supra:*

> One need not qualify as an expert in order to testify as to matters one learns through ordinary observation, such as the rate of speed at which a vehicle is going, provided a witness is fully interrogated as to the knowledge upon which his judgment is based, so that a jury can determine what weight should be given to his statements. [26 Mich App 493.]

Given the fact that a layperson, through ordinary experience, learns to judge the speed of vehicles as well as to judge the distance needed to stop a vehicle moving at a certain speed, the testimony of the above eyewitnesses that it was their opinion that, under the circumstances, defendant could not have avoided a collision with Sells' vehicle was properly admitted. The weight to be accorded these opinions was a decision properly left to the jury.

Plaintiff raises three claims regarding the trial court's failure to give jury instructions. Although standard jury instructions requested by a party must be given if they are applicable and they accurately state the applicable law, the trial court

determines in its discretion when these standard jury instructions are applicable. The trial court bases its conclusions upon the unique facts of the individual case. Therefore, it is conceivable that a requested instruction would be applicable, but that the trial court could refuse to give it based on the facts of the case. *Willoughby v Lehrbass*, 150 Mich App 319, 338; 388 NW2d 688 (1986); *Robins v Katz*, 151 Mich App 802, 807; 391 NW2d 495 (1986). A requested instruction need not be given if the instruction would neither add to an otherwise balanced and fair jury charge nor enhance the ability of the jurors to decide the case intelligently, fairly and impartially. *Robins, supra,* p 811. In addition, an appellate court should not reverse because of an erroneous or inadequate jury charge unless it concludes that noncompliance with the rule resulted in such unfair prejudice to a complaining party that the failure to vacate the jury verdict would be inconsistent with substantial justice. *Willoughby, supra.*

Plaintiff's first assignment of error in intructions is that the trial court erred in refusing to give SJI 10.08, concerning the presumption of due care afforded a decedent, since there was conflicting evidence as to whether Sells was acting with due care as he exited from the driveway. We disagree.

The effect of the presumption is to place upon a defendant the burden of showing by a preponderance of the evidence that the decedent failed to exercise due care. *Salvati v Dep't of State Highways,* 92 Mich App 452, 462; 285 NW2d 326 (1979), lv den by equally divided Court 415 Mich 708 (1982). However, the trial court may eliminate an instruction on the presumption when direct, positive and credible rebutting evidence is presented. *Stockman v Kinney,* 29 Mich App 432, 436; 185 NW2d 568 (1971). An examination of the evidence

presented at trial indicates that there was direct and uncontradicted evidence indicating that Sells pulled out directly into the path of defendant's clearly visible and oncoming vehicle.

Although plaintiff argued at trial that Stephens, the passenger in Sells' car, testified to facts indicating that Sells exercised due care as he left the theater driveway, the trial court did not agree with plaintiff's interpretation of Stephens' testimony. Plaintiff argues that, because Stephens testified that Sells stopped and looked both ways before exiting from the driveway, Sells exercised due care. However, as the court indicated in denying plaintiff's request for the presumption instruction, Stephens testified that he did not check for traffic himself. Therefore, since Stephens did not know if there was any traffic present when Sells exited from the driveway, Stephens' testimony does not contradict that of the other witnesses who all testified that Sells pulled out directly in front of defendant's car. Thus, because there was direct and uncontradicted evidence indicating that Sells failed to exercise due care when he pulled out directly in front of defendant's vehicle, the trial court did not err in denying plaintiff's request for the instruction on the presumption of a decedent's due care.

Plaintiff next argues that the trial court erred in refusing to instruct the jury on the doctrine of last clear chance, SJI 14.01. We disagree.

As this Court stated in *Zyskowski v Habelmann,* 150 Mich App 230, 252-253; 388 NW2d 315 (1986):

> In order for last clear chance to apply, there must be evidence that plaintiff was either helpless or inattentive prior to the accident and that defendant had notice that plaintiff was helpless or inattentive. *Zeni v Anderson,* 397 Mich 117, 152-

153; 243 NW2d 270 (1976). If defendant had either actual or constructive knowledge of plaintiff's helplessness or inattention, then a jury instruction on last clear chance must be given.

In the present case, even if it is assumed that the decedent was either helpless or inattentive, it cannot reasonably be said that Habelmann had either actual or constructive knowledge of the decedent's helplessness or inattention. There was no evidence to suggest that plaintiff's decedent was in the street and there to be seen in time for Habelmann to avoid the accident. . . . Thus, the trial court did not err in refusing to give the instruction.

In the instant case the trial court concluded that the facts did not warrant an instruction on last clear chance since the testimony of the four eyewitnesses indicated that defendant could not have avoided the collision. It is the trial court's function to determine in light of the unique facts of each individual case whether or not a standard jury instruction is applicable. Even though a requested instruction would be applicable, the trial court can refuse to give it based on the facts of the case. *Willoughby, supra.* We find no abuse of discretion in denying the instruction, since the uncontroverted evidence indicated that Sells pulled directly out in front of defendant's car, leaving defendant no opportunity to avoid the collision.

Although defendant argues that the doctrine of last clear chance is inapplicable since the adoption of comparative negligence in Michigan, this Court need not address the issue since the doctrine was not applicable to the facts of the instant case.

Plaintiff's last claim of error is that the trial judge abused his discretion in refusing to give CJI 5:2:13, regarding credibility of police witnesses. Plaintiff argues that, because four of the eight

witnesses to the acccident were police officers, the trial court should have given the criminal jury instruction on the credibility of police witnesses despite the fact that this was a civil case. Plaintiff contends that, under the facts of this case, the standard jury instructions inadequately informed the jury of the applicable legal principles and that, therefore, the trial court was required to give additional instructions. See *Hughes v Polk,* 40 Mich App 634, 643; 199 NW2d 224 (1972), lv den 388 Mich 770 (1972). We disagree.

The trial court gave the following instruction regarding witness credibility:

> You are the sole judges of the facts in this case, and you must determine which witnesses you believe and what weight you will give to their testimony. In doing so you may take into account each witness' ability and opportunity to observe; the witness' memory; the witness' manner while testifying; any interest, bias or prejudice the witness may have; and the reasonableness of the witness' testimony considered in the light of all the evidence in the case.
>
> Although you may consider the number of witnesses testifying on one side or the other when you weigh the evidence as to a particular fact, the number of witnesses alone should not persuade you if the testimony of the lesser number of witnesses is more convincing.

The trial court based its decision not to give the instruction on the credibility of police witnesses on four grounds: (1) the instruction is not included in the standard civil jury instructions; (2) the instant case is a civil action, with some police and some nonpolice witnesses; (3) the civil instruction on witness credibility instructs that the jury has the duty of judging the credibility of all witnesses; and (4) all of the jurors indicated during voir dire that

they would not prefer a police officer's testimony over other witnesses' testimony.

It is our opinion that the instructions given adequately informed the jury of the applicable principle regarding the credibility of witnesses, and that the instruction proposed by plaintiff would have been cumulative and would not have enhanced the ability of the jurors to decide the case intelligently, fairly and impartially. *Robins, supra.*

Moreover, even if the court erred in refusing to give the instruction, it is our view that this did not result in such unfair prejudice to plaintiff that the failure to vacate the jury verdict would be inconsistent with substantial justice. *Willoughby, supra.* Even if all four police witnesses would have been discredited with the giving of the instruction, the jury heard corroborating evidence in the testimony of lay witnesses relative to defendant's speed, his use of sirens and flashing lights, and his attempt to swerve and the manner in which Sells' pulled out from the private driveway into the path of defendant's patrol car.

Affirmed.