PETROVE v GRAND TRUNK WESTERN RAILROAD COMPANY

Docket No. 100796. Submitted November 9, 1988, at Detroit. Decided February 7, 1989. Leave to appeal applied for.

Deborah D. Petrove and David B. Petrove, for himself and as next friend of Kyle Janette Petrove, a minor, brought an action in the Oakland Circuit Court against the Grand Trunk Western Railroad Company, the Village of Leonard and others for damages for injuries sustained by Deborah when the automobile she was driving collided with a train. The court, Fred M. Mester, J., granted judgment for plaintiffs against the railroad on a jury verdict. The railroad appealed alleging numerous errors.

The Court of Appeals *held:*

1. It was within the trial court's discretion to instruct the jury on the doctrine of last clear chance since there was evidence that at least one of the railroad's employees had notice that plaintiff driver was helpless or inattentive prior to the accident and that the operators of the train could have avoided the accident.

2. The trial court did not abuse its discretion in instructing the jury that they could find a violation of the driver's statutory duties would be excused if they found that she used ordinary care and was still unable to avoid the violation because of a sight observation which precluded adequate warning of the approach of the train.

3. The trial court's ruling that a railroad may in concert with a public institution other than the public utilities commission set up blinking lights or flashing lights at a railroad crossing was correct.

4. The trial court properly refused to instruct the jury that a railroad engineer has no duty to slow or stop when approaching

REFERENCES

Am Jur 2d, Evidence §§ 251 *et seq.*; Expert and Opinion Evidence §§ 26-32; Railroads §§ 373-378, 477 *et seq.*; Release §§ 28-33; Negligence §§ 1009 *et seq.*; Trial §§ 574, 588 *et seq.*

Application of last clear chance doctrine to cases involving collision between train and motor vehicle at railroad crossing. 70 ALR2d 9.

a crossing until it becomes reasonably apparent that a motorist is not going to yield the right of way.

5. The trial court properly admitted the testimony of certain witnesses.

6. The trial court properly looked beyond the broad language contained in a release signed when plaintiffs settled with the village to find that the settlement agreement was intended to release only the village.

Affirmed.

1. TRIAL — JURY INSTRUCTIONS — STANDARD JURY INSTRUCTIONS — APPEAL.

A standard jury instruction must be given when it is applicable, accurate, and requested by a party; if the instructions are erroneous or inadequate, reversal is required only where a failure to reverse would be inconsistent with substantial justice.

2. NEGLIGENCE — LAST CLEAR CHANCE — JURY INSTRUCTIONS.

In order for the last clear chance doctrine to apply, there must be evidence that plaintiff was either helpless or inattentive prior to the accident and that defendant had notice that plaintiff was helpless or inattentive; if defendant had either actual or constructive knowledge of plaintiff's helplessness or inattention, then a jury instruction on last clear chance must be given.

3. TRIAL — JURY INSTRUCTIONS.

The determination whether a jury instruction is applicable and accurately states the law is within the discretion of the trial court.

4. RAILROADS — WARNING LIGHTS — CROSSINGS — PUBLIC UTILITIES COMMISSION — DEPARTMENT OF TRANSPORTATION.

A local road authority and a railroad may install flashing lights or stop signs at a railroad crossing without obtaining the permission of the Public Utilities Commission or the Department of Transportation (MCL 257.668, 469.8; MSA 9.2388, 22.768).

5. RAILROADS — CROSSINGS — WARNINGS.

A railroad company is required, in order to exercise due care, to meet the peril of an unusually dangerous grade crossing with unusual precautions by way of local warnings, whether such precautions are or are not required by statutory law or safety regulation, particularly where the dangerous condition results from obstructions to view which actually prevent the highway traveler from seeing an approaching train until he is dangerously close to the track.

6. Appeal — Evidence.

    A decision whether to admit certain evidence rests within the sound discretion of the trial court, and that decision will not be set aside absent an abuse of discretion.

7. Evidence — Relevance — Rules of Evidence.

    Evidence is relevant if it has any tendency to make the existence of a fact in issue to the action more or less probable than it would be without the evidence; relevant evidence may nonetheless be excluded from trial if its probative value is substantially outweighed by the danger of unfair prejudice (MRE 401, 403).

8. Witnesses — Expert Witnesses — Rules of Evidence — Appeal.

    A witness may be qualified as an expert if he has acquired specialized knowledge through experience, training or education; the question of whether the witness is qualified as an expert is left for the discretion of the trial judge, and his decision is to be interfered with only where an abuse of discretion is demonstrated (MRE 702).

9. Release — Judicial Construction.

    A release covers only the claims intended by the parties to be released; courts should look beyond the broad language of a release to determine the fairness of a release and the intent of the parties in executing it.

*James R. Porritt, Jr.,* for plaintiff.

*Patterson & Patterson, Whitfield, Manikoff, Ternan & White, P.C.* (by *Gerald G. White* and *Robert G. Waddell*), for defendant.

Before: Cynar, P.J., and Hood and Murphy, JJ.

Per Curiam. Following a jury trial, plaintiffs received a verdict of $2,310,000 against defendant Grand Trunk Western Railroad Company. The verdict was later reduced by a settlement setoff of $642,950 and the jury's finding of sixty-six percent fault attributable to plaintiff Deborah Petrove. Defendant appeals as of right. We affirm.

On the morning of January 13, 1982, plaintiff Deborah Petrove, who was driving a 1980 Volks-

wagen, travelled west on Elmwood Road toward the Village of Leonard to where she collided with a northbound train owned and operated by defendant railroad. At the time of the incident, the roads in the area were slippery and covered with snow. In addition to her other injuries, Deborah Petrove suffered a total memory loss regarding the events preceding the accident.

At trial, it was established that the posted speed limit on Elmwood was thirty-five miles per hour and that Deborah Petrove was driving between twenty-five and thirty-one miles per hour immediately prior to the collision. The speed tape on the train recorded that the train was traveling at twenty-eight miles per hour. Although the train passed over the crossing twice a day, there were no gates at the crossing nor were there flashing lights or a stop sign. However, there were two standard railroad warning signs. Plaintiff David Petrove, Deborah Petrove's husband, testified that he and his wife crossed over the railroad track on a daily basis. Furthermore, it was established that, when approaching the crossing from the east, much of the view of the track to the south is blocked by a factory building.

It was stipulated at trial that the approach whistle on defendant's train had been sounded prior to the collision. It was also determined that Deborah Petrove must have been aware of the train prior to the collision because of skid marks on the road that measured 110 feet. Although the train's engineer testified that he never saw plaintiff's car, the train's fireman testified that he saw the car a moment before the collision and that he immediately applied the emergency braking procedures. However, the train did not come to a complete stop until it had travelled another 600 feet. Following the impact, the driver's side door of

plaintiff's car opened and Deborah Petrove was thrown from the car. There was testimony that plaintiff Deborah Petrove's injuries would have been substantially lessened had she not been thrown from her car.

Plaintiffs filed a negligence action against defendant railroad and the Village of Leonard. Plaintiffs asserted that both defendants were negligent in failing to install adequate warning and safety devices at the crossing and that defendant railroad was additionally negligent in the operation of its train. The complaint was later amended to include Volkswagen of America as a defendant. Plaintiffs asserted that defendant Volkswagen breached various express and implied warranties in connection with the car door's opening after impact with the train.

After mediation was held, plaintiffs were awarded a mediation evaluation of $935,000 against the defendants. Plaintiffs received an award of $750,000 against Volkswagen, $150,000 against defendant railroad, and $35,000 against the Village of Leonard. Based on the evaluation, defendant village and plaintiffs entered into a settlement agreement of $35,000 and the village was dismissed from the suit.

Subsequently, plaintiffs filed a second amended complaint that added defendants Autobahn Motors, Woods Motors, and Volkswagenwerk Aktiengesellschaft. These additional defendants, as well as Volkswagen of America, were subsequently released from the suit following a settlement between the parties. Plaintiffs received a total of $642,950 from the settlements, including the $35,000 settlement with the village.

Plaintiffs introduced testimony from several expert witnesses at trial. Clarence McGoon, an assistant to the division administrator of railroad

safety for the Michigan Department of Transportation, testified that the MDOT would have granted defendant railroad permission to install flashing lights at the crossing if defendant had requested such permission. Mr. McGoon also testified that defendant railroad could have installed flashing lights without permission from the MDOT as long as the local road authority consented. Defendant objected to this latter testimony as a misstatement of Michigan statutory law. The trial court denied the objection and ruled that the statute, MCL 469.8; MSA 22.768, did not vest exclusive authority in the MDOT.

Dr. Michael Chi, whose expertise was in computer-generated accident reconstruction, testified that, if the train's engineer had seen plaintiff's car when first possible, the engineer could have stopped the train in time to avoid the accident. Dr. Chi also concluded that a person approaching the crossing from the direction that plaintiff had approached would not have been able to avoid the accident. Defendant objected to Dr. Chi's testimony on the grounds that he was not qualified as an expert in train and auto collisions and that he lacked a proper foundation to justify his conclusions. The trial court ruled that Dr. Chi's testimony was admissible.

The jury returned a verdict of $2,310,000 in favor of plaintiffs. However, the verdict was reduced by the $642,950 settlement setoff and the jury's finding of sixty-six percent fault attributable to Deborah Petrove. Defendant's subsequent motion for a new trial was denied.

On appeal, defendant first argues that the trial court committed error requiring reversal by giving the standard jury instruction on the last clear chance doctrine, SJI2d 14.01. We disagree.

A properly requested Standard Jury Instruction

must be given if it accurately states the law and if it is applicable to the case. *Houston v Grand Trunk W R Co,* 159 Mich App 602, 608; 407 NW2d 52 (1987). If the jury instruction is erroneous or inadequate, reversal is required only where failure to reverse would be inconsistent with substantial justice. *Willoughby v Lehrbass,* 150 Mich App 319, 336; 388 NW2d 688 (1986).

In order for the last clear chance doctrine to apply, there must be evidence that plaintiff was either helpless or inattentive prior to the accident and that defendant had notice that plaintiff was helpless or inattentive. *Zeni v Anderson,* 397 Mich 117, 152-153; 243 NW2d 270 (1976); *Sells v Monroe Co,* 158 Mich App 637, 650; 405 NW2d 387 (1987). If defendant had either actual or constructive knowledge of plaintiff's helplessness or inattention, then a jury instruction on last clear chance must be given. *Sells, supra,* p 651.

In the present case, there was evidence that at least one of defendant's employees had notice that plaintiff driver was helpless or inattentive prior to the accident. Furthermore, there was also some evidence that the operators of the train could have avoided the collision. Thus, it was within the trial court's discretion to instruct on the last clear chance doctrine. Moreover, even if the last clear chance instruction was inappropriate, we find that the instruction did not result in substantial injustice to defendant. *Willoughby, supra.*

Defendant next argues that the trial court improperly gave a jury instruction concerning excused violation of a statute, SJI2d 12.02. We disagree.

During the course of its instructions, the trial court instructed the jury regarding the statutory duties of a driver to operate her vehicle at a careful and prudent speed and to stop her vehicle

not less than fifteen feet from the nearest rail at a crossing. The court then gave SJI2d 12.01, regarding the effect of a statutory violation as proof of negligence. Following that instruction, the trial court gave SJI2d 12.02, stating:

> However, if you find that the plaintiff used ordinary care and was still unable to avoid the violation because of a sight observation which precluded adequate warning of the approaching locomotive and train, then her violation is excused.

The determination whether a jury instruction is applicable and accurately states the law is within the discretion of the trial court. *Houston, supra,* p 609. In *Zeni, supra,* pp 133-134, our Supreme Court indicated that the same five categories of excused violations listed under SJI2d 12.02 were not intended to be all-inclusive and do not restrict the acceptable gamut of excuse possibilities. In the instant case, it is undisputed that plaintiff's line of sight towards defendant's oncoming train was significantly obstructed by a factory building. Therefore, under the facts of this case, we find that the trial court did not abuse its discretion in determining that the sight obstruction was an appropriate excuse.

Defendant next argues that the jury was incorrectly instructed that it could consider, in determining defendant's negligence, whether defendant should have entered into an agreement with the Village of Leonard to install additional signs at the Elmwood Road railroad crossing. Defendant maintains that this instruction was contrary to MCL 469.8; MSA 22.768 and MCL 257.668; MSA 9.2388. We disagree.

MCL 469.8; MSA 22.768 provides in relevant part:

When in the discretion of the Michigan public utilities commission the safety of the public shall hereafter require that some protection device or improvement in existing devices be provided at a railway crossing to warn of the approach of trains about to cross the highway, it shall be the duty of the Michigan public utilities commission and it is hereby empowered to order the railway authorities owning the tracks of such crossings to provide protection of a flashing light type equipped with a gong of approved type at each signal which shall, unless otherwise agreed upon by the highway authorities responsible for the maintenance of the highway, be installed on the right hand side of the highway approaching the crossing from each direction on the near side of and at a distance from the center line of the outside tracks to be determined by the railway authorities and at a distance from the center line of the highway and above the crown of the roadway to be determined by the highway authorities responsible for the maintenance of the highway.

In the instant case, the trial court ruled that a railroad may in concert with a public institution other than the public utilities commission set up blinking lights or flashing lights at a railroad crossing. This ruling was consistent with the testimony of Clarence McGoon. Furthermore, the trial court's ruling was not contrary to MCL 469.8; MSA 22.768 or MCL 257.668; MSA 9.2388 since neither statute prohibits a local road authority and a railroad from installing flashing lights or stop signs without the permission of the utilities commission or the MDOT. Accordingly, we find that the trial court's instruction to the jury was not erroneous.

Defendant next argues that the trial court committed error requiring reversal by refusing to give defendant's requested instruction concerning an engineer's duty of care. We disagree.

Defendant's requested instruction stated as follows:

> The engineer of a train approaching a highway crossing at a speed testified to in this case is not required to stop or even slow his train when a vehicle is seen approaching the crossing until it becomes reasonably apparent that the vehicle is not going to yield the right of way to the train. Then and only then is the engineer required to take whatever action he can to avoid hitting the car.

The general rule is that when running through open country the speed of trains is not limited. *Buchthal v New York Central R Co,* 334 Mich 556, 562; 55 NW2d 92 (1952). However, when a railroad crossing is shown to be "unusually dangerous," ordinary care requires that the railroad meet the peril with unusual precautions, whether such precautions are or are not required by statutory law or safety regulation, particularly where the dangerous condition results from obstructions to view which actually prevent the highway traveler from seeing an approaching train until he or she is dangerously close to the track. *Baldinger v Ann Arbor R Co,* 372 Mich 685, 686-687; 127 NW2d 837 (1964).

In the present case, the Elmwood Road railroad crossing was not in open country. Moreover, the lack of a stop sign, a flashing light, or a crossing gate, as well as the obstruction of plaintiff's line of sight towards the track, all contributed to a railroad crossing more dangerous than one in open country. Therefore, we find that the trial court properly denied defendant's requested jury instruction.

Defendant next argues that the trial court erred in admitting certain testimony of Clarence Mc-

Goon into evidence. Defendant maintains that it was error for McGoon to testify that defendant could have contacted the MDOT or the Village of Leonard for permission to install automatic crossing signals. Defendant also maintains that it was error for McGoon to testify that the MDOT would not have refused defendant permission to install flashing signals at the crossing.

A decision whether to admit certain evidence rests within the sound discretion of the trial court, and that decision will not be set aside absent an abuse of discretion. *De Voe v C A Hull, Inc,* 169 Mich App 569, 577; 426 NW2d 709 (1988). When reviewing a trial court's decision to allow the jury to be presented with certain evidence, this Court will not assess the weight and value of the evidence but will only determine whether the evidence was of such a nature that it could be properly considered by the jury. *Id.* Evidence is relevant if it has any tendency to make the existence of a fact in issue to the action more or less probable than it would be without the evidence. MRE 401. Relevant evidence may nonetheless be excluded from trial if its probative value is substantially outweighed by the danger of unfair prejudice. MRE 403.

Contrary to defendant's contention in this case, Mr. McGoon's testimony was not speculative, irrelevant, or an improper legal conclusion, and the probative value of the evidence was not outweighed by the danger of unfair prejudice to defendant. Thus, we find that the trial court did not abuse its discretion in allowing the testimony.

Defendant further argues that it was error for the trial court to allow into evidence the testimony and opinions of Dr. Chi because he was not qualified as an expert and since there was a lack of foundation for his opinions.

In determining the admissibility of opinion testimony of a witness, the question of whether the witness is qualified as an expert is left for the discretion of the trial court, and the court's decision is to be interfered with only where an abuse of discretion is demonstrated. *De Voe, supra,* p 579. A witness may be qualified as an expert if he or she has acquired specialized knowledge through experience, training or education. MRE 702.

In this case, the record establishes that Dr. Chi had a bachelor's degree in civil engineering and a doctorate in applied mechanics. Additionally, Dr. Chi operated a company that was involved in computer-generated accident reconstruction. Also, Dr. Chi published articles and lectured on the use of computers in accident reconstruction. Thus, we find that the trial court did not abuse its discretion in concluding that Dr. Chi was an expert in computer-generated accident reconstruction. Furthermore, based on our review of the record, we find that Dr. Chi had a proper foundation to support his conclusions.

Defendant lastly argues either that the settlement between plaintiffs and the former defendants was a full satisfaction and release of all injury claims or that the documents should have been submitted to the jury for determination of the intent of the parties.

A release covers only the claims intended by the parties to be released. *Harris v Lapeer Public School System,* 114 Mich App 107, 115; 318 NW2d 621 (1982). This Court will go beyond the broad language of a release to determine the fairness of the release and the intent of the parties in executing it. *Id.*

In the present case, plaintiffs reached a $35,000 settlement with the Village of Leonard. The stan-

dard release form from that settlement provided for the "release and discharge of the Village of Leonard together with all other persons, firms, and corporations from any and all claims . . . arising out of" plaintiff's accident.

Defendant maintains that this provision should have released all of the joint tortfeasors in this case, including defendant, and that the trial court erred in ruling otherwise. We disagree.

Under the circumstances of this case, the trial court appropriately looked beyond the standard release language in the settlement agreement and properly concluded that it was intended only as a release of the village. The record discloses that the release resulted from the earlier mediation award of $35,000 against the village. Furthermore, since the total mediation evaluation included an award of $750,000 against Volkswagen of America and $150,000 against defendant railroad, it would be unreasonable to conclude that plaintiffs intended to forego all of their claims against numerous defendants in exchange for only $35,000. More-over, when the release form was filed with the trial court, it was accompanied by several documents clearly stating that the release was only as to the Village of Leonard. Thus, we find no error.

Affirmed.