*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MILON JARR BROWN,

        Defendant-Appellant.

UNPUBLISHED
May 16, 2019

No. 340767
Saginaw Circuit Court
LC No. 16-042930-FH

Before: SHAPIRO, P.J., and BORRELLO and BECKERING, JJ.

PER CURIAM.

Defendant appeals his convictions following a jury trial of first-degree felony murder, MCL 750.316(1)(b), second-degree murder, MCL 750.317, armed robbery, MCL 750.529, assault with intent to commit armed robbery, MCL 750.89, and four counts of possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced defendant to serve terms of imprisonment of 30 to 60 years for each murder conviction,[1] and 20 to 40 years each for the robbery and assault convictions, to be served concurrently, but consecutive to concurrent prison terms of two years each for the four felony-firearm convictions. We vacate defendant's convictions of, and sentences for, second-degree murder and the count of felony-firearm predicated on it, but affirm in all other respects.

Defendant's convictions arise from the June 26, 2016 shooting death of Cameron Pennywell during the course of a robbery in Saginaw. The prosecution's main witness was Daveon Thompson, who testified that he was visiting the Bridgton Townhomes in his mother's truck, along with the victim and Amaris Kinnard, when they encountered defendant. Kinnard passed defendant a book bag or backpack through an open window. According to Thompson, several minutes later, at an abandoned house near the Bridgton Townhomes, defendant produced a gun and accosted Thompson and the victim. Thompson said that defendant attempted to rob

---

[1] Defendant, a 17-year-old juvenile at the time of the offense, received a term-of-years sentence for his first-degree murder conviction pursuant to MCL 769.25(9).

him but found nothing to take, did take some cash and a cell phone from the victim, and then shot the victim several times; resulting in the latter's death shortly thereafter. Surveillance video footage from the Bridgton Townhomes substantially comported with this account. A paramedic attending to the victim shortly after the shooting testified that the victim repeatedly volunteered the apparent name "Cornel," including as his only reply to several questions put to him by the paramedic.

## I. SELF-INCRIMINATION

Defendant first argues that Kinnard's invocation of her Fifth Amendment right against self-incrimination was improper and denied him of his right to present a defense.[2]

A criminal defendant has a constitutional right to present a defense. See *People v Hayes*, 421 Mich 271, 278; 364 NW2d 635 (1984). A defendant has the right to compulsory service for obtaining favorable witnesses. US Const, Ams VI & XIV; Const 1963, art 1, § 20. However, the Fifth Amendment protects a witness from self-incrimination. *People v Wyngaard*, 462 Mich 659, 671-672; 614 NW2d 143 (2000). A witness may invoke the privilege against self-incrimination when there is a reasonable basis to fear incrimination. *People v Dyer*, 425 Mich 572, 578; 390 NW2d 645 (1986).

After the jury was empaneled, given preliminary instructions, and excused for the day, Kinnard took the stand and her own attorney elicited from her that she was scheduled for a trial the following week in a case that was described as "loosely related to this matter," and thus she elected to assert her Fifth Amendment privilege against self-incrimination. The prosecutor advised the court that

> Ms. Kinnard was interviewed as part of this murder investigation. And that's the present case. We believe she, in fact, lied to the detective during the course of that interview. She was subsequently charged with a felony, lying to a police officer in an investigation. That's the trial that she's facing next week.

The prosecutor agreed that Kinnard had a legitimate basis for asserting the privilege, explaining, "if she did, in fact, testify, in this case, I would certainly be questioning her about her earlier statements that she gave the detective." The prosecutor added that "Kinnard was not only involved in lying to the police, we believe she was very much involved . . . in the . . . robbery that led up to the shooting. So she, in addition, could face additional charges. We have not made that decision, at this point in time." Defense counsel advised the trial court that a conversation with Kinnard a week earlier suggested that "this witness would have been favorable to the defense." Defense counsel broached the subject of immunity for Kinnard, but acknowledged that he was unaware of any authority to compel the court to take such action. The court informed Kinnard that it was not excusing her, but that "if [defense counsel] comes up with

---

[2] We review de novo whether a defendant was denied his constitutional right to present a defense. *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002).

some authority or we decide that, for some reason, you may be able to be a witness, I want you to be available."

Defendant argues that the trial court should have undertaken further inquiry to establish that Kinnard's invocation of the Fifth Amendment was justified. Defendant contends that Kinnard's testimony could have been limited such that she would not have incriminated herself. He also argues that Kinnard should have been given "use immunity" to testify so that her testimony could not have been used against her at her trial. We decline to address the questions poised by defendant, however, because we conclude that Kinnard would not have provided him with a substantial defense.

To obtain appellate relief, defendant must show that he was denied the right to present a *substantial* defense. See *People v Petri*, 279 Mich App 407, 420; 760 NW2d 882 (2008). See also *People v Whitfield*, 425 Mich 116, 124 n 1; 388 NW2d 206 (1986) (applying harmless-error review to defendant's claim that he was denied the right to present a defense). "A substantial defense is one that could have affected the outcome of the trial." *People v Putnam*, 309 Mich App 240, 248; 870 NW2d 593 (2015).

Defendant argues that Kinnard's testimony would have been critical to the defense because it would have contradicted the prosecution's theory that the murder weapon was in the backpack that Kinnard gave defendant shortly before the shooting. We conclude that testimony from Kinnard countering any implication that she provided the murder weapon to defendant would have had little bearing on the outcome of the case. Thompson testified that defendant produced a gun from his waistband, and where the gun came from was not a significant factor in the case. Indeed, in argument the prosecutor emphasized to the jury that it was irrelevant whether Kinnard gave defendant the weapon. Accordingly, the jury's determination whether defendant was the shooter did not depend on whether the jury believed that Kinnard handed defendant a backpack with a gun concealed inside. Defendant fails to establish that he was denied his right to present a substantial defense as a consequence of Kinnard invoking her right against self-incrimination.

## II. IDENTIFICATIONS

Defendant argues that the trial court erred by allowing a police detective, a security guard for the Bridgton Townhomes, and Thompson to offer their respective opinions that defendant was among the persons depicted on the surveillance video footage in evidence.[3]

MRE 701 sets forth the following limitations on lay witness opinion testimony:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are

---

[3] We review a trial court's evidentiary decision for an abuse of discretion. *People v Martzke*, 251 Mich App 282, 286; 651 NW2d 490 (2002).

(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

It is improper for a witness to "express an opinion of the defendant's guilt or innocence of the charged offense . . . ." *People v Fomby*, 300 Mich App 46, 53; 831 NW2d 887 (2013) (quotation marks and citation omitted). Accordingly, "[w]hen a witness is in no better position than the jury to make an identification from a video or photograph, the testimony is inadmissible . . . ." *Id.* at 52-53, citing with approval *United States v Rodriguez-Adorno*, 695 F3d 32, 40 (CA 1, 2012). Such testimony invades the province of the jury *except* where there is " 'reason to believe that the witness is more likely to identify correctly the person than is the jury.' " *Fomby*, 300 Mich App at 52, quoting *United States v LaPierre*, 998 F2d 1460, 1465 (CA 9, 1993).

In this case, the trial court held an evidentiary hearing to decide whether to allow the challenged witnesses to offer opinions regarding the identities of the persons depicted on the surveillance video footage. At the hearing, Thompson testified that he had known defendant as a friend for a "[c]ouple years," during which time he saw him "[a]most every day." The security guard testified that he was familiar with defendant as part of the complex's "no-trespassing list," having removed defendant from the premises multiple times. The security guard explained that he was able to identify defendant because he recognized defendant's facial features, physical build, and tendency to walk in "fairly large strides for his size." The police detective was also familiar with defendant, having worked "road patrol" several years earlier in the area where defendant lived. The detective testified that he sometimes saw defendant "a couple times a shift." The detective testified that in reviewing the subject video footage he had no difficulty recognizing defendant on the basis of facial features, stature, and manner of walking.

Contrary to defendant's argument, the trial court did not abuse its discretion in deciding that the witnesses were in better position than the jury to identify defendant in the surveillance video footage. Thompson was intimately familiar with defendant, having been friends with him for years. We also note that Thompson was at the scene and appears in the video footage himself. The security guard and the detective were also familiar defendant and his unique gait, which the jury may or may not have had a chance to observe. Further, the court found that the stills taken from the surveillance footage were not clear and that the footage itself was "even less clear." Under those circumstances, the witnesses' testimony did not invade the province of the jury.[4]

### III. EXCITED UTTERANCE

---

[4] It was for the jury, however, to determine what weight to accord the lay opinion testimony. *Sells v Monroe Co*, 158 Mich App 637, 647; 405 NW2d 387 (1987).

Defendant argues that the trial court erred by ruling that certain hearsay statements were admissible under the exited utterance exception to the general prohibition against hearsay.[5]

Hearsay, meaning testimony relating a person's unsworn, out-of-court assertions offered to prove the truth of the matter asserted, MRE 801(c), is generally inadmissible, MRE 802, subject to several exemptions and exceptions as provided by the rules of evidence, MRE 801-805. At issue here is the exception for "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." MRE 803(2).

In this case, Thompson's cousin's testified that a few minutes after the shooting Thompson came to his apartment in a state of panic and said that the victim had been shot. The cousin testified that he repeatedly asked Thompson who shot the victim and that it "took [Thompson] a little minute to finally come out and say it," i.e., that defendant was the shooter. The trial court allowed the testimony over defendant's objection.

Defendant argues that the fact that Thompson needed to calm down before making his declaration shows that this was not an excited utterance. But in stating that the declarant calmed down, defendant effectively confirms the cousin's description of Thompson panicking in the first instance. Moreover, the cousin described Thompson as crying immediately upon revealing the suspect's name, and expressing astonishment that the person named would do such a thing.

Defendant also argues that the cousin's testimony shows that Thompson had time to contrive and misrepresent the circumstances of the event. Although the passage of time is a relevant consideration, "there is no express time limit for excited utterances." *People v Smith*, 456 Mich 543, 551-552; 581 NW2d 654 (1998). Admissibility depends not necessarily on how much time has elapsed since the startling event, but rather on the declarant still being under the stress of excitement resulting from that event. "The trial court's determination whether the declarant was still under the stress of the event is given wide discretion." *Id.* at 552. The exception thus applies where fabrication under the circumstances is unlikely, not necessarily impossible. For these reasons, the trial court did not clearly err in concluding that Thompson was still under the stress of the startling event when he told his cousin that defendant had shot the victim.

## IV. AUTOPSY PHOTOGRAPHS

Defendant, in his Standard 4 brief, argues that the trial court erred by admitting autopsy photographs.

"Photographs that are merely calculated to arouse the sympathies or prejudices of the jury are properly excluded, particularly if they are not substantially necessary or instructive to show

---

[5] We review the trial court's decision whether to admit evidence for an abuse of discretion, *Martzke*, 251 Mich App at 286, but review any preliminary factual determinations for clear error, see MRE 104(a); MCR 2.613(C).

material facts or conditions." *People v Mills*, 450 Mich 61, 77; 537 NW2d 909 (1995) (quotation marks and citation omitted), mod on other grounds 450 Mich 1212 (1995). However, a jury is entitled to learn the "'complete story'" of the matter at issue. *People v Sholl*, 453 Mich 730, 742; 556 NW2d 851 (1996), quoting *People v Delgado*, 404 Mich 76, 83; 273 NW2d 395 (1978). Accordingly, photographs offered for a proper evidentiary purpose "'are not rendered inadmissible merely because they bring vividly to the jurors the details of a gruesome or shocking accident or crime, even though they may tend to arouse the passion or prejudice of the jurors.'" *People v Eddington*, 387 Mich 551, 562-563; 198 NW2d 297 (1972), quoting 29 Am Jur 2d, Evidence, § 787, pp 860-861.

Defendant characterizes the two autopsy photographs at issue as "gruesome" and "inflammatory," but does not otherwise attempt to explain how they might have distorted the jurors' judgment. Further, the photographs were relevant to the testimony describing the various wounds. In light of this cursory argument, given the deferential principles that govern review of decisions on objections to photographic evidence, even if we accept at face value defendant's characterization of the challenged images as "gruesome," defendant's offering of that, without more, falls short of establishing a basis for concluding that the trial court erred by admitting the evidence. Accordingly, defendant fails to show that the trial court abused its discretion in admitting the photographs.

## V. DYING DECLARATION

Defendant, in his Standard 4 brief, makes issue of the trial court's decision to allow a paramedic who tended to the victim immediately after the shooting to testify that the victim several times volunteered, and in response to several questions answered only, the apparent name "Cornel." The trial court overruled the prosecutor's hearsay objection, ruling that the statements at issue were admissible under the exception for "a statement made by a declarant while believing that the declarant's death was imminent, concerning the cause or circumstances of what the declarant believed to be impending death." MRE 804(b)(2). We discern no basis for defendant's appellate objections in the matter.

Defendant's statement of the question presented for this issue appears to take issue with the prosecutor's objection to the paramedic's testimony relating to what the victim said, but a prosecutor's objection itself can hardly constitute error requiring reversal. An objection merely occasions a decision from the trial court, which is what is subject to appellate review. Further, the trial court granted defendant's motion to admit the hearsay describing the victim's dying declarations, statements defense counsel wished to elicit for the obvious strategic purpose of providing the jury with reason to suppose that someone other than defendant was the shooter. "[A] party cannot request a certain action of the trial court and then argue on appeal that the action was error." *People v McCray*, 210 Mich App 9, 14; 533 NW2d 359 (1995). For these reasons, we reject this claim of error.

## VI. JUDICIAL MISCONDUCT

Defendant, in his Standard 4 brief, asserts that the trial judge injected herself into the proceedings, and displayed favoritism and bias, on the grounds that the judge's questioning of

witnesses took on the prosecutor's role in probing motives for testifying, and displayed personal doubts concerning credibility.

A criminal defendant is entitled to a neutral and detached magistrate. *People v Cheeks*, 216 Mich App 470, 480; 549 NW2d 584 (1996). "[A] trial judge is presumed to be impartial, and the party asserting partiality has the heavy burden of overcoming that presumption." *People v Wade*, 283 Mich App 462, 470; 771 NW2d 447 (2009). The test for determining whether a judge's comments pierced the veil of judicial impartiality is whether, "considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *People v Stevens*, 498 Mich 162, 171; 869 NW2d 233(2015).

In this case, defendant asserts that the trial judge took on the role of prosecutor "with an agenda" during the court's questioning of the paramedic who attended to the dying victim for purposes of deciding the dying-declaration issue. However, a judge has the discretion to intervene in the presentation of evidence for the purpose of clarifying testimony or eliciting additional relevant information. *People v Weathersby*, 204 Mich App 98, 109; 514 NW2d 493 (1994). See also MRE 614(a) (the court may call a witness); MRE 614(b) (the court may interrogate witnesses). Moreover, the judicial questioning defendant challenges took place in the course of ultimately crediting what the witness had to say and thus *granting* defense counsel's motion. The jury was not present when the questioning occurred and so there is no possibility that the judge's conduct improperly influenced the jury. In sum, defendant fails to identify any judicial misconduct.

## VII. DOUBLE JEOPARDY

The prosecution's brief on appeal includes the following confession of error: "Although the issue was not raised by Appellate Counsel, the People would acknowledge that, due to the fact that Defendant-Appellant was convicted of both First-Degree Felony Murder and Second-Degree Murder resulting from the death of a single victim, that the Second-Degree Murder conviction should be set aside or vacated as constituting double punishment." A defendant "cannot properly be convicted of both first-degree murder and the lesser included offense of second-degree murder for the death of a single victim." *People v Clark*, 243 Mich App 424, 429-430; 622 NW2d 344 (2000). The remedy for such multiple convictions and sentences is to vacate the lesser conviction and sentence. *Id.* See also *People v Goodchild*, 68 Mich App 226, 236-237; 242 NW2d 564 (1976). In this case, the same reasoning applies to defendant's felony-firearm conviction and sentence predicated on second-degree murder.

Accordingly, pursuant to MCR 7.216(A)(7), we vacate defendant's conviction of, and sentence for, both second-degree murder and the count of felony-firearm predicated upon it, and remand this case to the trial court for the ministerial task of preparing, and transmitting to the Department of Corrections, a judgment of sentence amended to reflect these corrections.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Stephen L. Borrello
/s/ Jane M. Beckering